**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>WILLIAM JOSEPH PEPE,<br><br>Defendant. | Case No. 21-cr-00052 (TKJ)-2 |

**DEFENDANT'S MEMORANDUM OF LAW AND FACT IN SUPPORT OF HIS
MOTION FOR RELIEF FROM PREJUDICIAL JOINDER**

John M. Pierce (*PHV* admitted)
Pierce Bainbridge P.C.
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
(213) 262-9333
jpierce@piercebainbridge.com

*Attorneys for Defendant William Pepe*

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. FACTUAL BACKGROUND....................................................................................... 1

III. LEGAL STANDARD ................................................................................................. 3

IV. ARGUMENT............................................................................................................... 4

      A.     The Evidence Against Mr. Pezzola and Mr. Greene is Far More Damaging
           Than the Evidence Against Mr. Pepe Threatening to Impute Guilt onto
           Mr. Pepe in the Jury's Eyes ................................................................................... 4

              *i.*     *The Weight of the Conspiracy Charges is Far Greater Against Mr.*
                       *Pepe's Co-Defendants* ................................................................................. 5

              *ii.*    *The Nature of the Offenses Mr. Pepe is Joined with But Not*
                       *Charged are Likely to Prejudice Him.* ........................................................ 8

V. CONCLUSION .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blumenthal v. United States*,
    332 U.S. 539 (1948)................................................................................................4

*Glasser v. United States*,
    315 U.S. 60 (1942)................................................................................................3

*Kotteakos v. United States*,
    328 U.S. 750 (1946)..........................................................................................4, 5

*United States v. Bolden*,
    16 U.S. App. D.C. 60, 514 F.2d 1301 (1975) ........................................................4

*United States v. Ford*,
    155 F. Supp. 3d 60 (D.D.C. 2016) ........................................................................3

*United States v. Kelly*,
    349 F.2d 720 (2d Cir. 1965)............................................................................4, 7, 8

*United States v. Mardian*,
    178 U.S. App. D.C. 207, 546 F.2d 973 (1976) ................................................. *passim*

*United States v. Sampol*,
    204 U.S. App. D.C. 349, 636 F.2d 621 (1980) .............................................8, 9, 10

*Zafiro v. United States*,
    506 U.S. 534 (1993)..............................................................................................3

**Other Authorities**

Fed. R. Crim. P. 14 ....................................................................................1, 3, 5, 10

## I.      INTRODUCTION

Defendant, William Pepe (Mr. Pepe), by and through his counsel, tenders this memorandum of law and fact in support of his motion for relief from prejudicial joinder under the Federal Rules of Criminal Procedure 14(a). If the joinder of co-defendants would prejudice any of the defendants, the Court may sever the trials or order other remedies as justice requires. Mr. Pepe's co-defendant's charges are significantly more serious, dramatic, violent, and likely to inflame a jury, such that it would have a "spill over" effect on Mr. Pepe's right to a fair trial. Accordingly, Mr. Pepe moves this Court to sever his trial from Mr. Pezzola's and Mr. Greene's, his co-defendant's whom he has minimal factual relations within this case.

## II.     FACTUAL BACKGROUND

William Pepe is a resident of Long Island and works for an HVAC company. Mr. Pepe does not consume alcohol or drugs and has been fully sober for four years. Mr. Pepe travelled to D.C. numerous times including November and December of 2020 to lawfully protest and exercise his First Amendment Rights. Mr. Pepe never engaged in violence at either of these events.

On November 3, 2020 one of the most contentious elections ever was conducted during the middle of unprecedented changes to the voting system because of the COVID-19 pandemic. At a December 5th 2020 protest, Mr. Pepe met a Mr. Pezzolla for the first time. They spoke irregularly, usually before going to protests. Prior to January 6, 2021, Mr. Pepe had never met Mr. Greene.

On December 14, 2020 the electors from each state in the Electoral College voted and elected Joseph R. Biden as the next president of the United States. On January 6, 2021, a joint session of Congress was held with Vice President Mike Pence to certify the count of the election and announce President-elect Biden as the next President. On the same day as this routine

institutional action, President Trump held a "Stop the Steal" Rally on the National Mall, drawing thousands of his supporters from all over the country to protest the certification of the election.

On January 5, 2021 Mr. Pepe had work and worked until midnight. After work he made a spontaneous decision to go to D.C. to protest on the 6th and decided to drive through the night. He did not communicate with Mr. Pezzola or Mr. Greene that night about his decision to come to D.C. on January 6th.

Mr. Pepe arrived in D.C. at approximately 5:30 in the morning and went to a hotel where he was meeting a friend, neither Mr. Pezzola nor Mr. Greene. When Mr. Pepe arrived, and to Mr. Pepe's surprise, it turned out this friend had a hotel room with approximately seven people in it, including Mr. Pezzola and Mr. Greene. Mr. Pepe was unaware these persons were in the room at the time he went there, and slept for approximately one hour before getting up to get coffee and going to the protest. Mr. Pepe did not communicate with Mr. Pezzola or Mr. Greene, or anyone else besides his friend in the hotel room or share any materials or information with them in the hotel room.

On January 6, 2021, Mr. Pepe was wearing casual clothing. He did not have any tactical gear. He did not have any weapons of any kind. All he had was his clothing and his radio. Mr. Pepe did not attend the Stop the Steal Rally, but did meet up with friends from Hudson Valley, New York at a church on the morning of January 6. Mr. Pezzola and Mr. Greene were not there, as they were not a part of this Hudson Valley group.

Mr. Pepe and his friends walked to the monuments and then to the Capitol building to protest. People ahead of him threw barricades in his direction forcing him to push them out of the way to avoid being hit by them. Mr. Pepe was around and near police officers at numerous points, including when he was forced to deflect a barricade to avoid being trampled by the crowd behind him. Mr. Pepe was never told by law enforcement to stop, retreat or that he was entering a restricted

area or could face jail for entering. Mr. Pepe was not violent and did not engage in or participate in any violence or destruction of property at the Capitol

Mr. Pepe was unaware that Mr. Pezzola  broke a window, or that Mr. Pezzola stole a police riot shield. He did not communicate with Mr. Pezzola about these activities. Mr. Pepe was unaware of the manner in which the door he walked through was opened. Mr. Pepe walked through an already open door into the Capitol building and wandered the halls into the Rotunda without ever being confronted by police. He did not touch anything or break anything. He engaged in no violence. He took some pictures and videos, and stayed within the building for approximately thirty to forty-five minutes and then left.

Mr. Pepe did not spend any extended time with Mr. Pezzola or Mr. Greene during the events of January 6th. Mr. Pepe did not and could not communicate with Mr. Pezzola or Mr. Greene during the events of January 6 because he did not even know what radio channel they were on. After January 6th, Mr. Pepe received a ride home from his Hudson valley friends, not Mr. Pezzola or Mr. Greene.

## III.     LEGAL STANDARD

Rule 14 severance is warranted where joinder "appears to prejudice a defendant," Fed. R. Civ. P. 14(a), such as when there is "serious risk that a joint trial would" either (1) "compromise a specific trial right of one of the defendants," or (2) cause prejudicial spillover, i.e., "prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Ford*, 155 F. Supp. 3d 60, 66 (D.D.C. 2016) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993).).

The Supreme Court recognized that in criminal conspiracy cases "the liberal rules of evidence and the wide latitude accorded the prosecutor may, and sometimes do, operate unfairly against an individual defendant." *Glasser v. United States*, 315 U.S. 60, 76 (1942). The "dangers of transference of guilt" are such that a court should use "every safeguard to individualize each

defendant in his relation to the mass." *Kotteakos v. United States*, 328 U.S. 750, 774 (1946). *See Blumenthal v. United States*, 332 U.S. 539, 559-560 (1948). Therefore, even when a defendant is charged as a co-conspirator it is necessary to sever the trial when overwhelming evidence or the nature of charges against co-defendants is likely to prejudice the defendant.

When there is a great disparity in the weight of the evidence, strongly establishing the guilt of some defendants, the danger persists that that guilt will improperly "rub off" on the others. *United States v. Kelly*, 349 F.2d 720, 756-759 (2d Cir. 1965). Severance is among the most important safeguards available to minimize the risk of prejudice. *United States v. Mardian*, 178 U.S. App. D.C. 207, 546 F.2d 973, 977 (1976). Severance is required "when the evidence against one or more defendants is "far more damaging" than the evidence against the moving party." *United States v. Bolden*, 16 U.S. App. D.C. 60, 69, 514 F.2d 1301, 1310 (1975). This standard is met in Mr. Pepe's case as the weight of the evidence and the nature of the charges against his codefendants is far greater than the evidence and charges facing Mr. Pepe.

IV.    **ARGUMENT**

   A. **The Evidence Against Mr. Pezzola and Mr. Greene is Far More Damaging Than the Evidence Against Mr. Pepe Threatening to Impute Guilt onto Mr. Pepe in the Jury's Eyes**

The evidence against the co-defendants is damaging and likely to "rub off" on Mr. Pepe improperly impacting his right to a fair trial. *See Kelly*, 349 F.2d at 756-759. The weight of the evidence with regard to the conspiracy charges against Mr. Pepe is significantly weaker than the evidence against Mr. Pezzola and Mr. Greene. Further, Mr. Pezzola and Mr. Green's violence and destruction of property charges are likely to impute guilt onto Mr. Pepe who is not similarly charged. The presence of these serious and violent charges against Mr. Pepe's co-defendants are likely to prejudice the jury and cause a "transference of guilt" unfairly onto Mr. Pepe. *See*

*Kotteakos* , 328 U.S. at 774. This danger of prejudice against Mr. Pepe, mandates severance of Mr. Pepe's trial from that of his co-defendants under Rule 14(a).

i.      *The Weight of the Conspiracy Charges is Far Greater Against Mr. Pepe's Co-Defendants*

Where there is a substantial disparity in the weight of the evidence offered by the Government against co-defendants, severance is required, even when the movant is charged as a co-conspirator. *United States v. Mardian*, 178 U.S. App. D.C. 207, 546 F.2d 973, 977 (1976). A substantial disparity of evidence exists between Mr. Pepe and his co-defendants warranting severance.

In *Mardian* the court granted severance for the movant who was charged as a conspirator, but unlike his co-defendant presented minimal involvement in the alleged conspiracy. *Id*. The court noted the movant was only involved in a same temporal window of the conspiracy and only alleged to have been involved with a small fraction of the overt acts alleged by the government. *Id*. Given these factual limitations a substantial part of the testimony would focus on events outside the scope of the movant's participation. *Id at* 978. Specifically, if the trials were held jointly the jury would be exposed to voluminous evidence in which the movant's name would never even appear. *Id*. As a result, the danger of prejudice rubbing off on the movant justified severance.

The evidence against Mr. Pezzola and Mr. Greene is far greater than Mr. Pepe. Mr. Pezzola and Mr. Greene stayed in the same hotel room overnight and likely spoke to each other during this time, perhaps even before. Mr. Pepe arrived in the early hours of January 6th and only spent one hour sleeping in the room co-defendants occupied, he never communicated with them when in that hotel room. Mr. Pezzola and Mr. Greene were familiar with each other and communicated. Mr. Pepe did not know Mr. Greene prior to January 6, and was only vaguely familiar with Mr. Pezzola. Mr. Pepe did not coordinate with the co-defendants, communicate

5

with them in or around January 6th. Mr. Pepe did not help or assist Mr. Pezzola or Mr. Green on

January 6 in any way. Mr. Pepe did not know where Mr. Greene or Mr. Pezzola were on January

6 and had no way of knowing where they were on January 6. Mr. Pepe made no plans with his

co-defendants and the Government has no evidence of such plans as they do not exist.

The government's indictment of Mr. Pepe alleges the manner and means of the conspiracy

include, coordinating travel and lodging around January 6th, obtaining supplies and radios to

coordinate an attack, dressing in plain clothes to conceal their identities, interfering with police

barriers, moving past police lines and barriers and breaking int the Capitol by damaging

windows. Indictment at 7. In addition the government identifies the following as overt acts of the

alleged conspiracy, Pezzola ripped a riot shield away from an officer, Pezzola and Greene

climbed the west plaza steps carrying the stolen riot shield, Pezzola taunted officers attempting

to stop the crowd's advance, Pezzola attempted to break a window of the Capitol building with

the riot shield, Pezzola successfully broke the window and allowed rioters to enter the building

through the window, and Pezzola climbed through the window into the Capitol. *Id*. at 7-10. The

extent of Mr. Pepe's alleged involvement in the conspiracy was Mr. Pepe's presence at the

Capitol, initial contact with police barracade, and entering the Capitol through an open doorway.

*See id*.

The government's case as presented in the indictment like the government case in

*Mardian* will unduly prejudice Mr. Pepe in a joint trial. As in *Mardian*, if the movant is not

severed the jury will be exposed to voluminous evidence in which the movant's name would

never even appear. *Mardian*, 546 F.2d at 977. Specifically, this trial will largely focus on Mr.

Pezzola's violent confrontation with police in which he wrestled a riot shield from a police line

and further charged up the steps of the Capitol to smash open a window providing access to the

Capitol. The government does not attempt to claim Mr. Pepe was alongside or in contact with

6

Mr. Pezzola while any of these acts occurred. Nor does the government assert Mr. Pepe and his co-defendants maintained contact at any point on January 6th. Instead, it is highly likely the factual evidence for each co-defendant will be largely distinct with little overlap. Thus, as in *Mardian*, severance is required where Mr. Pepe is only alleged to have played a minimal role in the conspiracy and shares only minor contacts with his co-defendants whom he simply shared a room with for less than a few hours.

Severance for an alleged co-conspirator was also justified in *United States v. Kelly* where likewise the movant played a minor role in the alleged conspiracy. *Kelly*, 349 F.2d at 759. The movant in *Kelly* like the movant in *Mardian* was prejudiced by a joint trial where long spans of the trial passed without mention of the movant's name. Despite being charged as a co-conspirator the minor role the movant played in the alleged conspiracy rendered the joinder of his trial with the co-defendants prejudicial as their guilt could tend to rub off on the movant. Meanwhile, the movant's co-defendants had acted in a "shameless way" and "thumbed their noses" at authority. An overwhelming amount of evidence of the co-defendant's more severe conduct was found to have inevitably rubbed off on the movant. *Id*. Further, the court identified an interest in severing the trial to cut down on the length of the trial, as an overly long case involving multiple defendants can on its own prejudice the jury who may blame the defendants for the excessively long trial. *Id*.

The only alleged facts tying Mr. Pepe to his co-defendants are, that they all were in D.C. on January 6th and participated in the protest that led to the Capitol building. The only physical connection identified is Mr. Pepe and his co-defendants knew a mutual friend who allowed them to briefly sleep in a hotel room. The Government lacks evidence that Mr. Pepe made plans to go to D.C. more than a few hours before he began driving there. There is no conspiracy on the part of Mr. Pepe to "coordinate the January 6 attack" or "break into the Capitol" as the indictment

alleges. *See* Indictment at 7. The alleged co-defendants and Mr. Pepe did not even conspire to

"arrange travel and lodging" in DC around January 6. *Id.* Mr. Pepe did not communicate with

Mr. Pezolla or Mr. Greene regarding travel or lodging at all, in fact, he did not communicate to

Mr. Pezolla or Mr. Greene in the days leading up to January 6 in any capacity. Any evidence that

Mr. Pezolla and Mr. Greene coordinated together exists independent of Mr. Pepe further

demonstrating his lack of involvement with the charged co-defendants.

Mr. Pepe arrived at the protests having drove through the night from New York and met

up with local Hudson Valley friends, not Mr. Pezolla and Mr. Greene who do not belong to Mr.

Pepe's local organization. He did not participate in any conspiracy. There is no evidence he

participated in, or communicated with Mr. Pezolla or Mr. Greene regarding a conspiracy to

attack the Capitol. The evidence against Mr. Pezolla and Mr. Greene with regard to conspiracy

between the two co-defendants is far more damaging than the weight of the evidence against Mr.

Pepe. As in *Mardian* and *Kelly* the minimal factual connections of the movant to the co-

defendants and minor role in the conspiracy will lead to a trial in which Mr. Pepe plays a minor

role but is overly exposed to the evidence against the co-defendants prejudicing Mr. Pepe.

Therefore, the joinder is prejudicial and severance is warranted.

        ii.        *The Nature of the Offenses Mr. Pepe is Joined with But Not Charged are Likely to Prejudice Him.*

Not only is the weight of the evidence against Mr. Pepe's co-defendants prejudicially

damaging, but the substance and type of charges and evidence brought against his co-defendants

is unduly prejudicial.  "The quantity and type of evidence adduced against the co-defendants, is a

vital consideration in evaluating the necessity for severance." *United States v. Sampol*, 204 U.S.

App. D.C. 349, 636 F.2d 621, 646 (1980). When there is a gross disparity in the quantity and

type of charges against co-defendants it is fair to inquire whether the jury can reasonably be

expected to compartmentalize the evidence as it relates to separate defendants in the light of its

volume and limited admissibility. *Id*. A gross disparity in the evidence and charges facing the co-
defendants and Mr. Pepe exists primarily due to the violent nature of Mr. Pezzola's alleged

crimes in this case justifying severance. A disparity in the conduct charged is independent

grounds for severance even if the court finds the weight of the evidence against Mr. Pepe is not

significantly outweighed by the evidence against his co-defendants. *Id.*

In *Sampol* the court found severance was necessary where the movant's co-defendants

were accused of violent crimes likely to enflame the passions of the jury. *Id*. The co-defendants

in *Sampol* were accused of intentionally participating in violent crimes in which the testimony

would include "gory details described with extreme accuracy to the jury." *Id*. The movant would

be required to sit in court as emotionally charged testimony about the shocking violent acts was

painstakingly retold and the jury would "hear his name bandied around the fringes of those

offenses as one of the "leaders." *Id*. This creates an improper air of prejudice around the movant

that can only be properly remedied by severance.

Mr. Pepe's co-defendant in this case, particularly Mr. Pezzola, is charged with violent

crimes which are reasonably likely to inflame the passions of the jury and make it impossible for

them to compartmentalize the evidence as it relates to Mr. Pepe. Mr. Pezzola is charged with

assaulting officers, stealing a police officer's riot shield, and then using that riot shield to smash

through a window that led to countless people entering the Capitol building. Mr. Pezzola is

undoubtedly a key player and highly publicized figure in January 6th event.  Mr. Pepe in contrast,

walked around the Capitol grounds, went through an already opened door, well after it had been

forced open by others and wandered the Capitol halls taking pictures before leaving. He was not

violent. He did not have weapons. He did not have any violent confrontations with law

enforcement. He did not assist Mr. Pezzola in assaulting officers or stealing Government

property. When contrasting Mr. Pepe's charges with those of Mr. Pezzola a gross disparity becomes clear.

The amount and provocative nature of the evidence required to prove serious and violent charges against Mr. Pepe's co-defendants greatly exceeds the evidence which is relevant and necessary to charge Mr. Pepe. As in *Sampol* it is unrealistic to expect a jury not to be influenced by such extraneous testimony in its assessment of the movant's guilt upon the lesser charges for which he was tried. *Id.*

In a joint trial a jury will be repeatedly shown footage of Mr. Pezzola punching and pushing officers, screaming at them, and smashing through the windows of the Capitol building with a stolen police riot shield, it is "fair to inquire whether the jury can reasonably be expected to compartmentalize the evidence." Such evidence will be extremely prejudicial, leading a jury to impute the actions of Mr. Pezzola, a man Mr. Pepe barely knows, onto Mr. Pepe. There is a significant danger that while Mr. Pepe was nowhere near Mr. Pezzola or in contact with Mr. Pezzola when Mr. Pezzola committed violent acts the jury will never the less fail to be able to separate Mr. Pezzola's conduct from Mr. Pepe's. Where the nature of the charged offenses is so disparate for some co-defendants compared to the charges of others, severance is warranted to prevented prejudice. *See id.* In Mr. Pepe's case, severance is warranted as Mr. Pezolla's conducted is far more damaging than the conduct of Mr. Pepe, involving damage to property and physical violence against officers.

## V.    CONCLUSION

For the forgoing reasons, William Pepe moves for this Court to sever his trial from that of his co-defendants Mr. Pezzola and Mr. Greene under Fed. Rule of Crim. Pro. 14(a). In the interests of justice, this relief is warranted because the evidence is far more damaging against

Mr. Pepe's co-defendant's both in weight and in character and thus joinder would prejudice the

jury against Mr. Pepe.

Date:   May 11, 2021                    Respectfully submitted,


                                         /s/ John M. Pierce
                                        John M. Pierce (*PHV* admitted)
                                        Pierce Bainbridge P.C.
                                        355 S. Grand Avenue, 44th Floor
                                        Los Angeles, CA 90071
                                        (213) 262-9333
                                        jpierce@piercebainbridge.com

                                        *Attorneys for Defendant William Pepe*

11

## CERTIFICATE OF SERVICE

I hereby certify that, on May 11, 2021, the forgoing document was filed via the Court's

electronic filing system, which constitutes service upon all counsel of record.

/s/ John M. Pierce
John M. Pierce
