## UNITED STATES DISTRICT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    -v-

WILLIAM PEPE,

          Defendant.

Case No. 1:21-cr-000052 (TJK)


## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT 2: <u>OBSTRUCTION OF AN OFFICIAL PROCEEDING</u>


John M. Pierce
Pierce Bainbridge P.C.
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
(213) 262-9333
jpierce@piercebainbridge.com

*Attorneys for Defendant William Pepe*

## TABLE OF CONTENTS

I.    INTRODUCTION ..............................................................................................1

II.   FACTS OF THE CASE ...................................................................................2

III.  LEGAL STANDARD ......................................................................................4

IV.   The Government Has Failed to Charge an Essential Element of the Offense. ...................5

      A.    An "Official Proceeding" Requires a Quasi-Judicial Function .................6

           1.    The Surrounding Statutory Language Indicates Congress's Intent for 1512(c)(2) To Be Interpreted Narrowly ....................................6

           2.    Accepted Canons of Statutory Interpretation Favor a Narrow Definition of "Official Proceeding" That Does Not Include the Election Certification Results .........................................................9

           3.    Rule of Lenity Favors Narrow Application ...................................10

      B.    Process of Confirming President Joe Biden's Victory Does Not Constitute a Quasi-Judicial Function .........................................................11

V.    The Government's Interpretation of 1512(c)(2) Renders the Greater Statutory Scheme Surrounding Obstruction of Congressional Proceedings Superfluous ................12

VI.   CONCLUSION ................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Marinello v. United States*,
   138 S. Ct. 1101 (2018) ....................................................................................................7, 8

*United States v. Bowdin*,
   770 F. Supp. 2d 142 (D.D.C. 2011) ...................................................................................3, 4

*United States v. Dunn*,
   434 F. Supp. 2d 1203 (M.D. Ala. 2006) .........................................................................5, 6, 8

*United States v. Ermoian*,
   727 F.3d 894 (9th Cir. 2013) .......................................................................................1, 5, 6, 8

*United States v. Hillie*,
   227 F. Supp. 3d 57 (D.D.C. 2017) .................................................................................4, 10

*United States v. Mosquera-Murillo*,
   153 F. Supp. 3d 130 (D.D.C. 2015) .....................................................................................3

*United States v. Orellana*,
   405 F.3d 360 (5th Cir. 2005) ................................................................................................9

*United States v. Perez*,
   575 F.3d 164 (2d Cir. 2009) .................................................................................................7

*United States v. Ramos*,
   537 F.3d 439 (5th Cir. 2008) ....................................................................................... *passim*

*United States v. Sunia*,
   643 F. Supp. 2d 51 (D.D.C. 2009) .......................................................................................3

*United States v. Sutherland*,
   921 F.3d 421 (4th Cir. 2019) ..............................................................................................12

**Statutes**

18 U.S.C. § 1505 ......................................................................................................................11

18 U.S.C. § 1512 ............................................................................................................... *passim*

18 U.S.C. § 1515 ............................................................................................................... *passim*

**Federal Rules**

Fed. R. Crim. P. 12 (b) ..................................................................................................2, 3

**Constitution**

U.S. Const. amend. I ........................................................................................................12

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012) ...............................................................................................8

*Black's Law Dictionary* 1241 (8th ed. 2004) ................................................................6

Edwin E. Bryant, T*he Law of Pleading Under the Codes of Civil Procedure* 3-4 (2d ed. 1899) ...........................................................................................................1

Mr. Pepe, by and through his counsel, tenders this memorandum in support of his motion to dismiss the indictment as to Count 2 as defective because, as a matter of law, the Electoral College Vote Certification was not an "official proceeding" within the meaning of the statute. As such, the Government has failed to state an essential element of the charge and it must be dismissed.

## I.   INTRODUCTION

The Government's indictment is defective with regard to 18 U.S.C. § 1512(c)(2) because it fails to state an essential element of the offense. 1512(c)(2) requires Mr. Pepe to have "otherwise obstruct[ed], influence[ed], or impede[ed] any official proceeding." The Congressional vote to confirm President Joe Biden's electoral victory does not constitute an "official proceeding" under the statutory language of 18 U.S.C. §§ 1515(a)(1) and 1512(c)(2). Therefore the 1512(c)(2) count against Mr. Pepe must be dismissed.

For purposes of defining "official proceeding" in 18 U.S.C. § 1512, "proceeding" has been defined in various ways, ranging from the broad to the specific. Consulting both lay and legal dictionaries suggests that "proceeding" may be used either in a general sense to mean the carrying on of an action or series of actions, or more specifically as a legal term of art to mean a legal action or process; any act done by authority of a court of law; a step taken by either party in a legal case. *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013), as amended (Aug. 28, 2013) "'Proceeding' in the legal context has also been defined as a word much used to express the business done in courts" and "is an act done by the authority or direction of the court, express or implied." Edwin E. Bryant, The Law of Pleading Under the Codes of Civil Procedure, 3-4 (2d ed. 1899)). These definitions alone indicate proceeding has a narrower definition than may readily appear. Further, the surrounding statutory language, legislative scheme, and rule of lenity all further clarify an "official proceeding" under 1512 requires a quasi-judicial function, which is

1

lacking from the Congressional vote to confirm President Joe Biden.  Accordingly, the indictment is defective for failing to state an offense and the charge must be dismissed.  Fed. R. Crim. P. 12 (b)(3)(B)(v).

## II.   FACTS OF THE CASE

William Pepe is a resident of Long Island and works for an HVAC company. He does not do drugs or drink and has not drank in 4 years. Mr. Pepe travelled to DC numerous times including November and December of 2020 to protest. Mr. Pepe never engaged in violence at either of these events.

On November 3, 2020 one of the most contentious elections ever was conducted during the middle of unprecedented changes to the voting system because of the COVID-19 pandemic. At a December 5th 2020 Protest, Mr. Pepe met a Mr. Pezzolla and became friendly with him. They spoke irregularly, usually before going to protests. Prior to January 6, 2021, Mr. Pepe had never met Mr. Greene

On December 14, 2020, the electors from each state in the Electoral College voted and elected Joseph R. Biden as the next president of the United States. On January 6, 2021, a joint session of Congress was held with Vice President Mike Pence to certify the count of the election and announce President-elect Biden as the next President.

This certification process requires that the president of the Senate, Vice President Mike Pence, presides over the session. Vice President Pence duties were to open and present the electoral vote certificates from each state and Washington, D.C., in alphabetical order. The certificates are to be read aloud by "tellers," members of the U.S. House of Representatives and Senate appointed to the roles. The vice president then asks if any members of Congress wish to object to any of the votes. The Electoral Count Act of 1887 allows members of Congress to object to a state's electoral vote. Objections must be written and signed by at least one member of the House and one senator,

2

then submitted after the state's vote is read. The two chambers then meet separately and debate for up to two hours before deciding whether to continue voting given the objection. The objection fails unless both chambers vote by a simple majority to concur with the objection. After all the votes are read, the tellers record and count them. The vice president then declares an official winner once one presidential ticket reaches 270 votes.

On the same day as this routine institutional action, President Trump held a "Stop the Steal" Rally on the National Mall, drawing thousands of his supporters from all over the country to protest the certification of the election.

On January 5, 2021 Mr. Pepe had work and worked until midnight. After work he made the decision to go to DC to protest on the 6th and decided to drive through the night. Mr. Pepe arrived in DC at approximately 5:30 in the morning.

On January 6, 2021, Mr. Pepe was wearing casual clothing. He did not have any tactical gear apart from his radio. He did not have any weapons of any kind. Mr. Pepe did not attend the Stop the Steal Rally, but did meet up with friends from Hudson Valley, New York at a church on the morning of January 6.

Mr. Pepe and his friends walked to the monuments and then to the Capitol building to protest. People ahead of him threw barricades in his direction forcing him to push them out of the way to avoid being hit by them. Mr. Pepe was around and near police officers at numerous points, including when he moved a barricade to avoid being trampled by the crowd behind him, and was never told to stop, not to do it or that he was entering a restricted area or could face jail for entering. Mr. Pepe was not violent and did not engage in or participate in any violence or destruction of property at the Capitol

3

Mr. Pepe was unaware that Mr. Pezzola was the one who broke a window, or stole a police riot shield. He did not communicate with Mr. Pezzola about these activities. Mr. Pepe was unaware of the manner in which the door he walked through was opened. Mr. Pepe walked through an already forced open door into the Capitol building and wandered the halls into the Rotunda. He did not touch anything or break anything. He engaged in no violence. He took some pictures and videos, and stayed within the building for approximately thirty to forty-five minutes and then left.

After January 6, Mr. Pepe received a ride home from his Hudson valley friends and did not meet back up with Mr. Pezzola or Mr. Greene or discuss the events with them.

## III.   LEGAL STANDARD

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," including for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "[A] pretrial motion to dismiss an indictment allows a district court to review the sufficiency of the government's pleadings, but it is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 154 (D.D.C. 2015) (citation and internal quotation marks omitted). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (emphasis added).

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590  (1974). The notice requirement "is established in the Sixth Amendment, which provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]'" *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017) (quoting U.S. Const. Amend. VI). "A valid indictment also preserves the Fifth Amendment's protections against

abusive criminal charging practices; specifically, its guarantees that a criminal defendant can only be prosecuted for offenses that a grand jury has actually passed up on, and that a defendant who is convicted of a crime so charged cannot be prosecuted again for that same offense.

*Id.*

An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged. *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed. *See Hillie*, 227 F. Supp. 3d at 70.

## IV.   The Government Has Failed to Charge an Essential Element of the Offense.

To satisfy the constitutional requirements for an indictment the indictment, when viewed as a whole, must contain all the essential elements of the offense charged. *Bowdin*, 770 F. Supp. 2d at 146. Obstruction of an Official Proceeding, under 18 U.S.C. § 1512 (c)(2),[1] requires that Mr. Pepe "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so." An "official proceeding" in this section is defined in § 1515 (a)(1) as:

a.   a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand  jury;

b.   a proceeding before the Congress;

c.   a proceeding before a Federal Government agency which is authorized by law; or

d.   a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce." *Id.*

---

[1] Unless otherwise specified, all further references to statute in this memorandum refer to Title 18 of the United States Code.

Thus, the essential elements require some corrupt intent, an action that "obstructs, influences, or impedes" and "an official proceeding." While Mr. Pepe continues to dispute the fact that he had the corrupt intent to obstruct anything, a pretrial motion to dismiss is not the proper forum for these arguments and it will not be made here. Rather, Mr. Pepe contends that, as a matter of law, the certification of the Electoral College vote on January 6, 2021 was not an "official proceeding" within the meaning of the statute because it did not have a "quasi-judicial function." As a result, the Government has failed to charge an essential element of obstruction of an "official proceeding" and this charge must be dismissed.

## A.    An "Official Proceeding" Requires a Quasi-Judicial Function

### 1.    The Surrounding Statutory Language Indicates Congress's Intent for 1512(c)(2) To Be Interpreted Narrowly

The statutory language and history indicate that the statute does not apply to the January 6 certification of election results. The title of § 1512 is "Tampering with a witness, victim, or an informant." It was enacted as part of the Victim and Witness Protection Act of 1982. As explained in the Justice Manual, § 1512 "proscribes conduct intended to illegitimately affect the *presentation of evidence* in Federal proceedings or the communication of information to Federal law enforcement officers" and applies to *tampering with witnesses* in "proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings."[1] The title of § 1512, and placement in the statutory scheme, indicate that it was intended solely and exclusively to punish and deter those who would interfere with quasi-judicial investigatory proceedings. Accordingly, § 1512 may apply where a person intimidates a witness called to testify during a congressional investigation or an impeachment. However, § 1512 plainly does not apply when Congress is merely engaging in a routine, ministerial function, such as certification of a presidential vote.

6

Regarding the language of § 1512(c)(2), "proceeding" is limited by the prefatory phrase "official," which narrows the scope of application to quasi-judicial functions. For purposes of defining "proceeding" in § 1515, use of the preposition "official" before in connection with the term Federal Government agency, Congress, or the Courts implies that an "official proceeding" involves some formal convocation in which parties are directed to appear, instead of any informal investigation or nonjudicial conduct by a governmental body conducted by any member of the agency. *See Ermoian*, 727 F.3d at 895.

The Fifth Circuit acknowledged the definition of "official proceeding" must be defined narrowly based on its definition found in § 1515(a)(1)(c). *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008); U*nited States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006). The Court recognized, as other circuits confirmed, that the definition of "official proceeding" is presented in a circular manner requiring the court to examine the surrounding language of the statute to determine Congress's intent. *Id.*; *see Proceeding*, Black's Law Dictionary, 1241 (8th ed. 2004) (defining proceeding in relevant part as "3. An act or step that is part of a larger action" and "4. The business conducted by a court or other official body; a hearing," and also citing approvingly an understanding of "proceeding" as "much used to express the business done in courts").

The Ninth Circuit properly identified that difficulty arises from the fact that "proceeding" has both a general, lay meaning, and a technical meaning, thereby requiring the court to look beyond dictionary definitions at the words and surrounding phrases of the statute to determine the meaning of the term. *Id*. The full term used in § 1512 is "official proceeding." *See* § 1515. Congress's deliberate use of the prefix "official" indicates a Congressional intent to apply the narrower legal definition to the term "proceeding" rather than the more expansive, layperson's

definition. *Ermoian*, 752 F.3d at 1170. Further, the term "official proceeding," and the clause it is contained in, is surrounded with other terms contemplating legal usage such as "judge and court," "Federal grand jury," "Congress," "Federal Government agency," and the clarification that the type of proceeding at issue is those that "is authorized by law." *Id*. These factors weighed together by the Court heavily indicated Congress' intent was for "official proceeding" to be defined narrowly and not be applicable to all government actions.

The Ninth Circuit defined "official proceeding" narrowly as to not include federal agency criminal investigations. **"**Examining the term 'proceeding' within the grammatical structure of the definition at issue, it becomes clear that the term connotes some type of formal hearing." *Id*. Further, the Fifth Circuit explained when addressing this same definition, of "official proceeding" the preparatory qualifiers and surrounding formal legal language implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency. *Ramos*, 537 F.3d at 462-63. This indicates that the "official proceeding" element of § 1512 is limited in its application to government actions with a quasi-judicial character. The electoral college vote confirmation wholly lacks these quasi-judicial characteristics.

The Second Circuit has also assigned a narrow definition to "official proceeding" when examining § 1512(c)(1) finding the work of senior officials charged with "quasi-adjudicative" responsibilities would fit the definition of "official proceeding." *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009). This precedent again reinforces that in determining if a government action constitutes an "official proceeding" to which § 1512(c) is meant to apply, there must be a quasi-judicial function at work, and not a mere institutional action.

The Second Circuit further clarified the requirements to qualify as an "official proceeding," holding that the disputed Use of Force Program Statement in the case was more than a preliminary investigation or mere institutional action. *Id.* Critically, the action at issue contained a detailed process of review of decision making, a review by a panel of senior officials, was designed to determine if a policy had been adhered to, and review the nature and findings of After-Action Reports. *Id*. Detailed process review and a quasi-judicial function were present in order to satisfy the requirements of an "official proceeding." Thus, in all the instances in which the term "official proceeding" is used in § 1512, it is in contemplation of a quasi-judicial hearing. *See Ramos*, 537 F.3d at 463.

The term "official proceeding" implies something more formal than a mere investigation or routine institutional action. The limiting term "official proceeding" prevents a statutory sprawl in which the countless communications of citizens with one agency or another of the federal government lay the groundwork for a potential obstruction prosecution. *See Marinello v. United States*, 138 S. Ct. 1101, 1109-10 (2018) (reading tax obstruction statute not to extend to "routine, day-to-day work carried out in the ordinary course by the IRS"). Rather, § 1512(c)(2) is meant to perform the narrowly focused function of and deterring individuals who seek to intimidate or eliminate government witnesses who are set to give testimony or perform other roles in judicial or quasi-judicial proceedings. The vote confirmation of President Joe Biden by Congress does not exhibit any quasi-judicial characteristics and instead falls into the category of routine institutional action.

### 2. Accepted Canons of Statutory Interpretation Favor a Narrow Definition of "Official Proceeding" That Does Not Include the Election Certification Results

The term "official proceeding" in § 1515(a)(1)(C) indicates that a more formal sense of the term is the correct interpretation in the context of § 1512. The definition provided in Section

1515(a)(1)(C) uses the additional preposition "before" in connection with the term "Federal Government agency," which implies that an "official proceeding" involves some formal convocation of the agency in which parties are directed to appear. *Ramos*, 537 F.3d at 462-63; *Dunn*, 434 F. Supp. 2d at 1207. This paired with the preparatory word "official" qualifying "proceeding," disqualifies the lay definition of the term proceeding, and confirms that a narrower technical definition must be applied to the statutory term.

This form of statutory interpretation is well accepted by the nation's leading legal minds. "Sometimes context indicates that a technical meaning applies. . . . And when law is the subject, ordinary legal meaning is to be expected, which often differs from common meaning." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 73 (2012). When defining a statutory term, the court must choose to adopt a general or more technical meaning. Multiple appeals courts have already adopted the narrower more technical meaning of "official proceeding" in this statutory scheme. *See Ermoian*, 752 F.3d at 1171. The Fifth and Second Circuit properly narrowed the application of § 1512 in establishing an "official proceeding" only applies to government actions with quasi-judicial character.

### 3. Rule of Lenity Favors Narrow Application

Even if the Court finds the statutory language of § 1512 ambiguous as to the breadth of the term "official proceeding" the court should still find the Congressional vote to confirm President Joe Biden was outside the scope of the statute. When interpreting § 1512, courts must be mindful of the rule of lenity requiring courts to interpret ambiguous criminal statutes in favor of the defendant. *See United States v. Orellana,* 405 F.3d 360, 370 (5th Cir. 2005). When considering § 1512(c)(2), if the court does not adopt a narrow definition of the term "official proceeding," a definition that only includes government actions with a quasi-judicial function and those other acts

10

explicitly named in the statute—then the court must apply the rule of lenity to remedy the statute's overbroad and vague language.

The Fifth Circuit acknowledged the ambiguity of the term "official proceeding" in this statute, which led the court to apply the statute narrowly. *See Ramos*, 537 F.3d at 463-464. The Court held "any ambiguity leads to the same conclusion-- that § 1512 cannot be applied to the facts here. Such ambiguity and the absence of binding case law would require us to apply the rule of lenity." *See Orellana,* 405 F.3d at 370.

The rule of lenity in this case mandates a narrowing of the term "official proceeding" to only include government actions with a quasi-judicial character. Failure to apply the rule of lenity in this case would result in a statute which fails to give citizens reasonable notice of when they have begun to commit a serious felony carrying an up to a twenty-year prison sentence.

### B.    Process of Confirming President Joe Biden's Victory Does Not Constitute a Quasi-Judicial Function

The election certification on January 6 was not an "official proceeding" within the meaning of the statute. The election certification process requires that the president of the Senate, Vice President Mike Pence, presides over the session, open, and present the electoral vote certificates from each state. The certificates are read aloud by "tellers," members of the U.S. House of Representatives and Senate appointed to the roles. The vice president then asks if any members of Congress wish to object to any of the votes. The Electoral Count Act of 1887 allows members of Congress to object to a state's electoral vote. Objections must be written and signed by at least one member of the House and one senator, then submitted after the state's vote is read. The two chambers then meet separately and debate for up to two hours before deciding whether to continue voting given the objection. The objection fails unless both chambers vote by a simple majority to concur with the objection. After all the votes are read, the tellers record and count them. The vice

president then declares an official winner once one presidential ticket reaches 270 votes.[2] "The process is typically undramatic and ceremonial. It took 35 minutes to complete in 2017, 22 minutes in 2013 and 29 minutes in 2009, according to CBS News reporter Nancy Cordes."

While the certification of the election may be an official proceeding of Congress under a layman's definition, when considering statutory construction and Court precedent, it is not an "official proceeding" within the meaning of § 1512(c)(2). It is not "quasi-adjudicative" or "hearing"-like. The certification of the election did not direct parties to appear or testify, or have characteristics like a Court, Grand Jury, or adjudicative agency hearing. The indictment, which alleges that Mr. Pepe obstructed an "official proceeding" is therefore defective as it has not alleged an essential element of the crime. Even if all the facts in the indictment were taken in a light most favorable to the Government, and it was shown that Mr. Pepe in fact did or attempted to obstruct the electoral vote certification, the Government would still have not shown that Mr. Pepe violated § 1512(c)(2). Where an indictment is defective for failing to state an offense, it must be dismissed. *See Hillie*, 227 F. Supp. 3d at 70.

## V. The Government's Interpretation of 1512(c)(2) Renders the Greater Statutory Scheme Surrounding Obstruction of Congressional Proceedings Superfluous

The Government's overreach in utilizing § 1512(c)(2) to charge the defendants in the Capitol cases becomes evident when considering the larger statutory scheme at issue. Section 1512(c)(2) carries a harsher penalty than neighboring sections of the law that specifically enumerate criminal acts. It reads, "[w]hoever corruptly . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The potential for a twenty-year prison sentence is what has drawn the Government to § 1512(c)(2)—the Government seeks to impose harsher penalties on the defendants than those that would be ordinarily available in the statutory scheme.

Any other statute criminalizing an attempt to obstruct justice not involving murder carries a lower sentence than § 1512(c)(2).  The Government has failed to utilize the statutory law more plainly applicable to the charges being contemplated with the capitol riots, seemingly due to its zeal to acquire higher sentences than the law allows.

Section 1505, "Obstruction of proceedings before departments, agencies, and committees," provides a more properly concrete statutory definition of charges seemingly available to the government in this case. Section 1515 criminalizes acts that corruptly obstruct, or impede or endeavor to influence any pending proceeding that is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress. The punishment for this crime is imprisonment of not more than five years. Such a statute is rendered superfluous by the Government's interpretation of § 1512(c)(2) despite its more direct application to the case at hand and lack of ambiguous language.

Further, the Government's novel interpretation of § 1512(c)(2) is harsh, broad, ill-defined, and threatens to aggressively encroach on citizens' basic right to petition guaranteed by the First Amendment of our Constitution. *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). The Government's proposed application of § 1512 to any proceeding before Congress threatens to chill or burden excessively the right of persons to protest. *See United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019). Under the Government's proposed interpretation of the statute, a twenty-year sentence could be imposed against any protestors who block traffic on the way to the Capitol or otherwise delay any Congressmember from going about any official task. Despite such acts occurring regularly in modern politics, the Government has never before made such repressive

use of § 1512 until now, when the government has chosen to deploy the statute in an unprecedented manner on a massive scale.

## VI.   CONCLUSION

For the forgoing reasons, the indictment with respect to the charges alleging obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2) are defective for failing to state an offense. The Court should dismiss these charges.

Date:   May 11, 2021                     Respectfully submitted,


 /s/ John M. Pierce
John M. Pierce
Pierce Bainbridge P.C.
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
(213) 262-9333
jpierce@piercebainbridge.com

*Attorneys for Defendant William Pepe*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 11, 2021, the forgoing accompany documents was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

/s/ John M. Pierce
John M. Pierce