UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-52-2 (TJK) |
| v. | : | |
| | : | |
| WILLIAM PEPE, | : | |
| | : | |
| Defendant. | : | |

OPPOSITION TO DEFENDANT'S MOTION FOR
RELIEF FROM PREJUDICIAL JOINDER

The United States of America, by and through its attorney the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant William Pepe's Motion for Relief from Prejudicial Joinder, ECF No. 46. The defendant's motion should be denied. Any differences in the weight and charges between Pepe and his co-defendants is minimal, and any alleged prejudice to him can be cured with limiting instructions. The defendant's motion does not present an extraordinary case to overcome the strong preference for joint trials.

FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 16, 2021, the Grand Jury returned a superseding indictment charging the defendant, along with co-defendants Matthew Greene and Dominic Pezzola, with conspiracy to obstruct the Electoral College vote that took place at the United States Capitol on January 6, 2021, as well as to interfere with law enforcement during the course of a civil disorder. Pepe, Pezzola, and Greene are charged jointly with the following offenses: conspiracy, in violation of 18 U.S.C. § 371; civil disorder, in violation of 18 U.S.C. § 231(a)(3); destruction of government property, in violation of 18 U.S.C. § 1361, obstruction of an official proceeding, in violation of 18 U.S.C.

---

[1] This factual background section is provided to put the defendant's proffered facts in context and does not represent the entirety of the government's anticipated evidence at trial.

1

§ 1512(c)(2), and entering or remaining on restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), (2), and (4).  Pezzola is charged separately with robbery of U.S. government property in violation of 18 U.S.C. § 2112, assaulting, resisting, or impeding certain officers in violation of 18 U.S.C. § 111(a)(1), and a second count of civil disorder in violation of 18 U.S.C. § 231(a)(3).

These charges stem from the attack on the U.S. Capitol that took place on January 6, 2021. Pepe, Pezzola, and Greene are all members of a self-described "Western Chauvinist" organization known as the Proud Boys.  Proud Boys leadership had been planning to bring a number of its members to Washington, D.C. on January 6, 2021, for weeks leading up to that date.

At some point on January 5, 2021, Proud Boys leadership put word out to multiple chat rooms on the encrypted messaging platform Telegram—including "Boots on the Ground," of which both Pezzola and Pepe were members—to meet on the east side of the Washington Monument at 10:00 a.m. on the morning of January 6, 2021.  Pepe was there at or near the appointed time, along with Pezzola and Greene (and many other members of the Proud Boys). Notably, photos taken by Greene's phone show that he, Pezzola, and Pepe were in close proximity to each other at the Monument, and that all pictured were all following Proud Boys leadership's direction not to wear the Proud Boys' traditional black and yellow for the event.

Pepe, Pezzola, and Greene all marched with the Proud Boys from the Monument to the west side of the Capitol.  Pepe continued with the majority of the marching Proud Boys to the east side of the Capitol.  Shortly before 1:00 p.m., Pepe, Pezzola, and Greene, together with numerous Proud Boys and other individuals, were near a pedestrian entrance to the Capitol grounds near the Peace Monument on First Street NW.  This entrance to the grounds was guarded by a small number of U.S. Capitol Police officers standing behind waist-high metal barriers.  Members of

this crowd violently disassembled and trampled the metal barriers, and Pezzola, Pepe, and Greene all charged over the fallen barriers to advance toward the Capitol. One video showing Greene (and others) running up the pedestrian walkway shortly after this breach was recovered from Pepe's phone.[2]

Pezzola and Pepe were near the front of the line of people charging towards the Capitol building from the Peace Monument. As the crowd encountered another set of waist-high metal barriers, Pepe and another individual grabbed one of them and dragged it to the side—at the same time others were doing the same to other metal barriers—allowing the crowd (including Pezzola and Greene) to advance on a police line guarding access to a plaza to the west of the Capitol building ("West Plaza").[3]

Moments after Pepe dragged the barrier to the side and discarded it and the crowd advanced on the police line guarding access to the West Plaza, it fanned out across that line. As it did so, Pepe encountered another videographer, looked into the camera, and yelled, "Let's go! This is what we came for, yeah!" After those barricades were breached, Pepe was one of many Proud Boys who positioned himself towards the police line at the front of the plaza. According to a video

---

[2]     Based on the position of the videographer of this video, as well as other evidence showing Pepe's position within the crowd, the government does not contend that Pepe was the videographer for this video.

[3]     Pepe claims, Mot. at 2, that "[p]eople ahead of him threw barricades in his direction forcing him to push them out of the way to avoid being hit by them." He also claims that he "was forced to deflect a barricade to avoid being trampled by the crowd behind him." These claims are belied by video evidence. One such example is available here: https://intelx.io/?did=53a5f886-b61f-4227-9524-008dd70c2540 (last visited May 20, 2021). Pepe can be seen marching at, among other places, approximately the 9:30 time stamp. He can be seen in a black jacket, with an American flag bandana on his head, carrying a handled radio in his left hand. He marches past the videographer, who shortly thereafter turns around. At approximately the 9:47 timestamp, Pepe can be seen dragging a barrier to the side with another individual and discarding it. In evaluating this motion, the Court should rely on the factual allegations set forth in the indictment rather than defendant Pepe's self-serving and counterfactual assertions.

recovered from Pepe's phone, he was pepper sprayed on the West Plaza. He took a selfie-style video to proclaim that fact, and added, "Storming that Capitol, baby!"

After a series of clashes between police and rioters on the West Plaza, the rioters forced their way past police guarding a set of stairs that led under the under-construction Inauguration Stage and to the upper west terrace, and a number of entrances to the Capitol proper. After this breach, Pezzola and Greene were again among the first to cross the previously existing police line. Pepe was about fifteen seconds behind them. On the stairs, battles between the police and rioters raged, with both sides using pepper spray and barricades against the other as weapons. Pepe was there and in a position to witness everything going on around him. Indeed, he is in frame of the camera on at least one video in which Pezzola can be heard yelling at police, "We're not stopping! We're not fucking stopping!" and other choice phrases, and other rioters can be seen using chemical spray and other items as weapons against the police. Despite this, Pepe continued to advance on the Capitol.

Pepe entered the Capitol minutes behind Pezzola, through the door next to the window Pezzola smashed open with a stolen police riot shield. Once inside, as noted by the defendant, he took some photographs and videos. Mot. at 3.[4] The government has recovered some subset of those photographs and videos from the defendant's phone. In one such video, taken in "selfie" mode, Pepe shows himself and the Capitol rotunda, and says to the camera, "we did it." In another selfie video from inside the rotunda, Pepe said to the camera, "proud of your boy," and made a hand gesture commonly associated with the Proud Boys.

Following the attack on the Capitol, Pezzola and Pepe wound up back at Pezzola and

---

[4] All citations to page numbers in the defendant's motion are ECF No. 46-1, and page references are to the number at the bottom of the page, rather than the number in blue at the top of the page.

4

Greene's hotel. According to surveillance footage provided by that hotel, they were both walking through a hotel corridor together shortly after 11:30 p.m. on January 6, 2021. A zoomed and cropped still shot from that surveillance is below (with Pezzola and Pepe circled in red, and other individuals' faces obscured by blue blocks):



## LEGAL PRINCIPLES

"If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "As is clear from the text of the rule, district courts have significant flexibility to determine how to remedy any potential risk of prejudice posed by the joinder of multiple defendants in a single trial." United States v. Moore, 651 F.3d 30, 95 (D.C. Cir. 2011). "Indeed, although a district court may grant a severance in a wider array of circumstances, the Supreme Court has held that 'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" Id., quoting Zafiro v. United

5

States, 506 U.S. 534, 539 (1993).

Court have generally favored joint trials over severance. See, e.g., United States v. Hines, 455 F.2d 1317, 1334 (D.C. Cir. 1972) ("The balance has been struck in favor of joint trials"). Put simply, severance should be granted "sparingly." See United States v. Straker, 800 F.3d 570, 626 (D.C. Cir. 2015). "Absent a *dramatic* disparity of evidence, any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant." Moore, 651 F.3d at 95, quoting United States v. Slade, 627 F.2d 293, 309 (D.C. Cir. 1980) (emphasis in Moore but not Slade). The Supreme Court also favors instructions and other remedies over severance, even in cases where the risk of prejudice is high. See Zafiro, 506 U.S. at 539 ("When the risk of prejudice is high, ... less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice").

To obtain a severance, the defendant has the burden of establishing the requisite prejudice. See, e.g., United States v. Carson, 455 F.3d 336, 374 (D.C. Cir. 2006).

## ARGUMENT

Pepe asserts that a disparity between the weight of the evidence against him and his co-defendants, and differences between the substantive counts with which he is charged and the counts with which his co-defendants are charged, requires severance. These assertions are factually and legal unsupported. Pepe is properly joined in a single indictment with Greene and Pezzola, and there is substantial overlap in the evidence and charges against each defendant. The motion should be denied.

I. There is No Prejudicial Disparity in the Weight of the Evidence.

The defendant has presented no evidence or argument sufficient to overcome the strong preference in favor of joint trials. Despite the defendant's contention to the contrary, there will

6

be substantial overlap of evidence in this case. As noted above, all three defendants were present in close proximity to each other at the Washington Monument; all three marched with the Proud Boys from the Monument to the area surrounding the Capitol, and all participated in the breach of the First Street barricades in quick succession. Evidence from Greene's phone establishes Pepe's and Pezzola's presence at the Monument, and evidence from Pepe's phone establishes Greene's charge up the pedestrian path after the breach of the First Street barricades. Publicly available video shows Pepe and Pezzola walking up the First Street pedestrian walkway in close succession before Pepe throws a police barricade out of the way, allowing Pezzola and others to fan out along the front of the police line.

Video evidence of the push of the stairs shows Pezzola carrying the riot shield, with Greene trailing very close behind him. Pepe was part of this push up the stairs as well—he can be seen in the same video as Pezzola and Greene, entering the area under the scaffolding approximately 15 seconds after him. Pepe is also visible in the video from inside the stairs where Pezzola is shouting at police officers, and he enters the Capitol through the door next to the window broken by Pezzola, only minutes after him. Moreover, as evidenced by the surveillance footage recovered from the surveillance cameras at the hotel Pezzola and Greene stayed at, Pezzola and Pepe were together at that hotel shortly after 11:30 p.m. on January 6. In short, it is highly likely that there will be significant overlaps in evidence between the defendants.

Even if the Court accepts *arguendo* the defendant's recitation of what the evidence in this case will look like, and that a case like that would engender some prejudice, severance is unwarranted. The D.C. Circuit has repeatedly expressed its significant preference for joint trials, especially where any prejudice can be cured through jury instructions. See Legal Principles section, supra. Indeed, the Circuit has upheld denials of severance motions in cases with greater

or equal risk of prejudice to the moving defendant than the defendant has alleged here. See United States v. Straker, 800 F.3d 570, 626-28 (D.C. Cir. 2015) (upholding denial of severance where a defendant participated in a victim's kidnapping, but not his later murder, as well as where two of three defendants did not participate in kidnappings that were introduced pursuant to Fed. R. Evid. 404(b)); United States v. Moore, 651 F.3d 30, 96 (D.C. Cir. 2011) ("Although we do not ignore the possibility that some 'spillover' prejudice may have resulted to Handy and Nunn from being tried together with their codefendants, the district court's jury instructions, by explaining that each defendant's guilt should be considered individually based upon the evidence that pertained to him, were sufficient to cure any such prejudice"); United States v. White, 116 F.3d 903, 918 (D.C. Cir. 1997 (upholding denial of severance despite defendant's "comparatively modest role in the drug conspiracy and related acts of violence").

The defendant relies principally on Mardian v. United States, 546 F.2d 973 (D.C. Cir 1976), which stems from the cover-up of the Watergate break-in, in support of his argument that the alleged disparity in the weight of the evidence between Greene and Pezzola on the one hand, and Pepe on the other, mandates that the case be severed for trial. See Mot. at 5-8. In so doing, Pepe not only ignores the D.C. Circuit examples upholding denials of severance discussed above, he also elides major portions of the Mardian Court's decision to reverse the District Court's denial of severance. Unlike here, the severance motion erroneously denied by the trial court in Mardian was (1) made mid-trial, after it was clear that a significant portion of the government's case concerned co-conspirators' statements and actions occurring after Mardian was no longer an active participant in the conspiracy (although he had not withdrawn); (2) made after Mardian's counsel of choice fell ill mid-trial and would be unavailable for weeks; and (3) not opposed by the government. Id. at 978-79. None of those factors exist here.

Moreover, the Pepe ignores the notable fact that the D.C. Circuit in Mardian essentially upheld the District Court's pretrial denial of the severance motion in that case, based on the evidence presented at that stage, which it summarized as: (1) that Mardian had been named only in the conspiracy count, but no substantive count; (2) that only five of the 45 overt acts charged Mardian; and (3) that none of those overt acts charged Mardian with any activity occurring later than a month after the Watergate break-in, whereas the indictment charged that the conspiracy continued for nearly another two years thereafter. Id. at 977-78. Although the D.C. Circuit found that Mardian made a "substantial pretrial showing of possible prejudice requiring severance," it noted that showing was not so compelling that it was clear his interest in a separate trial outweighed the judicial-economy interests favoring joinder. Id. at 979. It was only after the trial evidence developed, the defendant's counsel-of-choice fell ill, and the government dropped its objection that the Circuit ruled severance was necessary. Id. at 980.

The reasoning applied by the Mardian court with respect to the pretrial severance determination applies here, except with more force because Pepe's proffered difference in the weight of the evidence is much less than the pretrial showing from Mardian. Whereas all parties agreed that Mardian was inactive in the conspiracy for the vast majority of its duration and not charged with any substantive counts, Pepe was an active member of the conspiracy through the events of January 6, met up with at least Pezzola at his hotel thereafter, and he is charged in the indictment's substantive counts. Moreover, whereas five of the 45 overt acts in the conspiracy indictment mentioned Mardian, ten of the fifteen overt acts charged in the First Superseding Indictment in this case mention Pepe. And, as illustrated by the factual allegations in the indictment and the facts set forth above, there is no serious risk that the evidence presented at trial will reveal the sort of prejudicial factors that sprung up in Mardian.

In short, there will be substantial judicial-economy benefits to trying these defendants together; there will be minimal prejudice to Pepe, if any, from "spillover" evidence, and any prejudice that does exist can be addressed through limiting instructions. His motion should consequently be denied.

II. No Differences in Charges Warrants Severance.

Pepe claims that an alleged disparity of charges between himself and his co-defendants warrants severance. He is mistaken. As an initial matter, defendants Pepe and Greene are charged with exactly the same offenses in the First Superseding Indictment, so there can be no disparity between those two defendants. Pezzola is charged separately from Pepe in three counts: two surrounding Pezzola's robbery of a U.S. Capitol Police riot shield, and one for Pezzola's participation with a group of rioters confronting a U.S. Capitol Police Officer inside the Capitol building. Notably, Pepe is charged jointly with Pezzola and Greene one of the acts that Pepe contends will cause him the most prejudice—the destruction of property charged stemming from Pezzola breaking a window to the Capitol with a riot shield. Pepe ignores this fact in his motion.

Pepe similarly ignores that he is jointly charged in a conspiracy with Pezzola that included as its purpose "to stop, delay, or hinder Congress's certification of the Electoral College vote, *by force if necessary*." First Superseding Indictment at ¶ 26 (emphasis added). Pezzola's actions and statements in furtherance of the conspiracy—some of which show him using the force contemplated by the conspiracy Pepe is charged with joining—are rightly imputed to Pepe. See, e.g., Pinkerton v. United States, 328 U.S. 640, 646 (1946) ("And so long as the partnership in crime continues, the partners act for each other in carrying it forward. It is settled that an overt act of one partner may be the act of all without any new agreement specifically directed to that act.") (internal punctuation omitted).

The defendant relies primarily on United States v. Sampol, 636 F.2d 621 (1980), in support of his contention that the alleged disparate nature of the charges in this case require severance. See Mot. at 8-10. His reliance is misplaced. Sampol was a multi-codefendant case that stemmed from the assassination of the former Chilean ambassador to the United States, as well as an American associate of his. Sampol, 636 F.3d at 629. Multiple co-defendants were charged with conspiracy to murder a foreign official, murder of a foreign official, first-degree murder, and related charges in connection with the attack. Id. One defendant, referred to in the opinion as Ignacio, was charged in the same indictment only with false declarations to the grand jury and misprision of a felony. He was not charged with the conspiracy or homicide offenses. Id.

The D.C. Circuit reversed Ignacio's conviction, noting that while the lack of a conspiracy charge against him may have allowed the jury to easier compartmentalize the evidence, "[t]he long stream of witnesses testifying to the details of the assassination conspiracy and the actual assassination provided testimony that was largely irrelevant to Ignacio's guilt," and that, under the prevailing circumstances, the resulting prejudice could not be ameliorated. See id. at 646-47. That is far from the case here. Pepe is charged jointly with Greene and Pezzola in a conspiracy and is charged substantively with the same crimes committed by Greene, and most of the crimes committed by Pezzola—including one of the offenses on which his motion expresses the most concern, Pezzola's destruction of the Capitol window with the riot shield. Evidence of Pezzola's and Greene's actions on January 6 is in fact material and relevant to Pepe's guilt and would be admissible at a separate trial of Pepe. To the extent some small subset of either co-defendant's actions would not be admissible at a separate trial against Pepe, the Court can minimize any prejudice with a limiting instruction. See, e.g., United States v. Carson, 455 F.3d 336, 375 (D.C. Cir. 2006) (Court's instructions that "[e]ach offense and the evidence that applies to it should be

11

considered separately, and you should return separate verdicts as to each ...." and "[T]he fact that you may find a defendant guilty or not guilty of any one count of the indictments should not control or influence your verdict with respect to any other count of the indictments," cured any prejudice).

WHEREFORE, the United States respectfully requests that the defendant's motion be denied.

Respectfully submitted,

CHANNING PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:     /s/ *Erik M. Kenerson*
Erik M. Kenerson
Christopher A. Berridge
Assistant United States Attorneys
Ohio Bar No. 82960 (Kenerson)
GA Bar No. 829103 (Berridge)
555 4th Street, N.W., Room 11-909
Washington, D.C. 20530
202-252-7201
Erik.Kenerson@usdoj.gov
Christopher.Berridge@usdoj.gov