**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-52-2 (TJK)** |
| **v.** | : | |
| | : | |
| **WILLIAM PEPE,** | : | |
| | : | |
| **Defendant.** | : | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO:**
**OBSTRUCTION OF AN OFFICIAL PROCEEDING**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, hereby respectfully submits this opposition to the defendant's Motion to Dismiss Count Two: Obstruction of an Official Proceeding. The defendant's motion should be denied because the certification of the Electoral College Vote—which is required by the Constitution and governed by precise statutorily prescribed requirements—is an official proceeding as contemplated by the obstruction statute.

**PROCEDRUAL HISTORY**

On April 16, 2021, the Grand Jury returned a superseding indictment charging the defendant, William Pepe, along with co-defendants Matthew Greene and Dominic Pezzola, with conspiracy to obstruct the Electoral College vote that took place at the United States Capitol on January 6, 2021, as well as to interfere with law enforcement during the course of a civil disorder. Pepe, Pezzola, and Greene are charged jointly with the following offenses: conspiracy, in violation of 18 U.S.C. § 371; civil disorder, in violation of 18 U.S.C. § 231(a)(3); destruction of government property, in violation of 18 U.S.C. § 1361, obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and entering or remaining on restricted building or grounds, in violation of

18 U.S.C. § 1752(a)(1), (2), and (4).   Pezzola is charged separately with robbery of U.S. government property in violation of 18 U.S.C. § 2112, assaulting, resisting, or impeding certain officers in violation of 18 U.S.C. § 111(a)(1), and a second count of civil disorder in violation of 18 U.S.C. § 231(a)(3).

On May 11, 2021, the defendant filed a motion to dismiss Count Two of the first superseding indictment, ECF No. 48, which charges him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2).   For the reasons stated below, the defendant's motion is without merit and should be denied.[1]

## **LEGAL STANDARD**

A defendant may move to dismiss an indictment or count thereof for failure to state a claim prior to trial.   *See* Fed. R. Crim. P. 12(b)(3)(B)(v).   The government agrees with the defendant that "[a]n indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged.   *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).   The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed.   *Id.*   An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is

---

[1] The defendant makes factual representations in support of his motion, and the government disagrees with some of them.   Because, as the defendant concedes (*See* Mot. at 10), a motion to dismiss is a purely legal matter and not the proper forum to litigate a factual dispute, the government will not address the factual portion of the defendant's motion, but we do note that we do not agree that his representations are all accurate.

defective and must be dismissed." *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017); Mot. 5.[2]

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The "Definitions" provision, 18 U.S.C. § 1515, states that "[a]s used in section[] 1512," (1) the term 'official proceeding' means— (A) a proceeding before a judge or court of the United States … or a Federal grand jury;" (B) a proceeding before the Congress; (C) a proceeding before a Federal Government agency which is authorized by law; or (D) a proceeding involving the business of insurance … before any insurance regulatory official or agency…." 18 U.S.C. § 1515(a)(1).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

## ARGUMENT

### I.    The certification of the Electoral College vote is an official proceeding

The defendant argues (Mot. 6-14) that Congress's certification of the Electoral College vote on January 6, 2021 does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).  That argument lacks merit.

---

[2] All citations to the defendant's motion are to ECF No. 48-1, and the page number citations are to the page numbers at the bottom of the page, rather than the page numbers in blue at the top.

## A.  Background

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote.  Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted."  U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII.  Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors."  3 U.S.C. § 15.  Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives."  *Id.*  The President of the Senate is empowered to "preserve order" during the Joint Session.  3 U.S.C. § 18.  Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once."  3 U.S.C. § 17.  The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared."  3 U.S.C. § 16.

The obstruction statute with which the defendant is charged prohibits corruptly obstructing, influencing, or impeding any official proceeding.  18 U.S.C. § 1512(c)(2).  An official proceeding for purposes of § 1512(c)(2) is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) *a proceeding before the Congress*;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).

### B.  Certification of the Electoral College vote is a proceeding before the Congress

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).  That conclusion flows principally from the obstruction statute's plain text.   Skipping past the text, the defendant argues that Congress's intent and other language in the obstruction statute import a "quasi-judicial" requirement into the term "official proceeding."  That argument is incorrect, but even if it were, it would not disqualify the Electoral College vote certification.   The defendant's remaining arguments—that his interpretation finds support in other cases; that the rule of lenity would otherwise apply; and that interpreting the Electoral College vote certification as a "proceeding before the Congress" renders other statutes superfluous—are similarly flawed.

1. Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding."  *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013).   The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term.  In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com).   The

defendant does not meaningfully contend that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding—under that broad definition. And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly. Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section 1515—including the cases relied upon by the defendant—courts analyze the degree of formality involved in an investigation. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because

the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added).

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169. Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute. Required by law to begin at 1 pm on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding

officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). The Electoral College vote certification, moreover, must terminate with a decision: no recess is permitted until the "the count of electoral votes" is "completed," and the "result declared." *Id*. In short, the certification of the Electoral College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).

Other textual features do not alter that straightforward reading. The defendant argues (Mot. 7-10) that the adjective "official" and the preposition "before" limits the definitions in Section 1515(a)(1) to "quasi-judicial" proceedings. As an initial matter, it is difficult to imagine a proceeding more "official" than a constitutionally and statutorily prescribed Joint Session of Congress. Whatever the merits of the defendant's argument for other provisions in Section 1515(a)(1), moreover, it finds no textual support when applied to Section 1515(a)(1)(B), which speaks broadly of a proceeding "before the Congress." Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency.[3] And to the extent that "before" refers to "some formal convocation of the agency in which parties are directed to appear," *see United States v. Young*, 916 F.3d 368, 384 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 113 (2019), the certification of the Electoral College vote

---

[3] The defendant relatedly suggests (Mot. 13) that Section 1505 has a "more direct application" to his case. That is incorrect. In addition to prohibiting obstruction of a proceeding before a federal agency or department, Section 1505 also criminalizes obstructing "the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House." 18 U.S.C. § 1505. Congress is not a federal agency and department, and the certification of the Electoral College vote is not an "inquiry or investigation."

involves a "formal convocation" of Congress to assess the Electoral College vote and "declare[]" the "result" of the presidential election, 3 U.S.C. § 16.

Section 1505 points out another textual flaw in the defendant's argument. The defendant argues (Mot. 6) that "a proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B) should encompass only "a congressional investigation or an impeachment." But Section 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020). If Congress could limit the obstruction prohibition under Section 1505 to congressional investigations, it could have done so in the text of Section 1515(a)(1)(B). But it did not. Instead, Congress enacted broader language—"a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505. That broader definition includes the Electoral College vote certification.

2. Rather than engage with Section 1515's text, the defendant relies on "surrounding statutory language," "Congress's intent," and "history" to argue that the certification of the Electoral College vote is not an "official proceeding" because it does not perform a "quasi-judicial function." Mot. 6 (capitalization altered). That approach fails in three respects. First, it is methodologically flawed. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is a congressional proceeding, a proceeding before the Congress. Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation

marks omitted).  The defendant offers no rationale for breezing past the statute's plain text to reach for other interpretive tools.

Second, the other statutory tools on which the defendant purports to rely do not aid his argument.  For example, the defendant suggests (Mot. 6) that Congress intended the obstruction statute "to be interpreted narrowly."  Putting aside that the "best evidence of [a statute's purpose] is the statutory text adopted by both Houses of Congress and submitted to the President," *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991), the obstruction statute's legislative history in fact underscores that Congress intended official proceeding to reach "broadly," and to encompass "the rare type of conduct that is the product of the inventive criminal mind."  S. Rep. No. 97-532, at 17-18.

The  defendant also contends (Mot. 6) that Section 1512's title—"Tampering with a witness, victim, or an informant"—implies that the "official proceeding" definition in Section 1515 does not cover the Electoral College vote certification.  Even putting aside the defendant's selective invocation of the statutory title—he urges this Court to adopt the reasoning in cases like *Ermoian* holding that an "official proceeding" does not include a law enforcement investigation even though the title's reference to "an informant" would clearly suggest otherwise—his contention runs headlong into "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text."  *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947).[4]  Finally, the specific statutory provision under which

---

[4] The defendant's invocation of the Justice Manual similarly has no bearing on the Court's analysis. The USAM (the previous name of the Justice Manual) "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal."  *United States v. Goodwin*, 57 F.3d 815, 818 (9th Cir. 1995) (quoting USAM §1-1.100). *Cf. United States v. Caceras*, 440 U.S. 741, 754 (1979) (IRS manual does not confer any substantive rights on taxpayers but is instead only an internal statement of penalty policy and philosophy).

the defendant is charged, 18 U.S.C. § 1512(c)(2), explicitly reaches more broadly than tampering: it "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense. *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2104)).

Finally, the defendant's narrowed reading of "proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B)—in essence, importing an extra-textual "quasi-judicial" requirement— would undercut the broad statute that Congress enacted. In the defendant's view, for example, an individual who threatened a Senator and a Representative with injury unless each agreed to object to the Electoral College certification—even though each Member knew that the objections were frivolous—would not amount to obstruction. Nor would it appear to cover an individual who paid one of the tellers—who are appointed by the Senate and House of Representatives to handle the Electoral College votes—to falsify or destroy votes. Indeed, other than a vague reference to "a congressional investigation,"[5] Mot. 6, the defendant does not explain which congressional proceedings—short, perhaps, of impeachment—would fall within the ambit of his narrowed definition. That crabbed approach fails to recognize that the certification of the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes." *Sutherland*, 921 F.3d at 426. Whatever the outer limits of a "proceeding before the Congress" for purposes of the obstruction statute, the Electoral College vote certification falls well within them.

---

[5] The defendant does not grapple with the anomalous result that follows from his argument: an investigation by a committee—not even a full House, let alone both Houses—would qualify as a "proceeding before the Congress," but a constitutionally required Joint Session to resolve disputes over and ultimately certify the result of a presidential election would not.

The defendant's challenge fails even if he were correct—and he is not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must be "quasi-judicial" or "quasi-adjudicative." Far from a "routine, ministerial function" (Mot. 6) or a "routine institutional action"[6] (Mot. 9), the certification of the Electoral College vote comprises features that resemble an adjudicative proceeding. It involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]." 3 U.S.C. § 15. That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election. As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it. *Id.* And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result." 3 U.S.C. § 16.

3. The defendant's remaining arguments also lack merit. First, the defendant implies (Mot. 7-9) that courts have agreed with his narrowed approach. As noted above, however, those cases addressed an entirely different question, namely, whether law enforcement investigations qualified as "official proceedings" under a subsection defining that term as a "proceeding before a Federal Government agency which is authorized by law." 18 U.S.C. § 1515(a)(1)(C). Those courts have therefore struggled with questions—to what extent an agency investigation is a proceeding; whether the requirement in § 1512(f)(1) that a proceeding "need not be pending or about to be

---

[6] In an apparent effort to reinforce the point that the Electoral College certification is routine, the defendant notes (Mot. 12) that it took less than an hour in 2009, 2013, and 2017. The amount of time a proceeding lasts, however, has no relationship to whether it is routine. And it has similarly no bearing on whether it qualifies as an official proceeding. If a grand jury met to hear a witness who testified for five minutes, that proceeding would no less official (under 18 U.S.C. § 1515(a)(1)(A)) for its brevity.

instituted at the time of the offense" as applied to agency investigations would reach "conduct that occurred even pre-criminal-investigation," *Ermoian*, at 752 F.3d at 1172; whether the "official" modifier "implies something more formal than a mere investigation," *Sutherland*, 921 F.3d at 426—that do not arise here. The certification of the Electoral College vote is a congressional proceeding, not an investigation, and involves a degree of formality distinct from any agency investigations. And, in any event, the pertinent definition—a "proceeding before the Congress"— is phrased more broadly than the definition those courts were construing.

Second, the defendant invokes (Mot. 10-11) the rule of lenity. The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *see Shular v. United States*, 140 S. Ct. 779, 789 (2020) (Kavanaugh, J., concurring). There is no grievous ambiguity here. Section 1512(c)(2) criminalizes obstructing an "official proceeding"; Section 1515(a)(1)(B) defines that term to include a "proceeding before the Congress," which, as discussed above, encompasses the certification of the Electoral College vote.[7] No guess work is needed.

To be sure, no court of which the government is aware has interpreted the meaning of "proceeding before the Congress" in the obstruction statute. Even if the defendant's premise that

---

[7] The defendant's reliance on the Fifth Circuit's discussion of the rule of lenity in *Ramos* is unavailing for two reasons. First, as noted above, the *Ramos* court was considering the distinct question of whether a law enforcement investigation constituted an "official proceeding" under a different definition of that term. 537 F.3d at 462-63. Second, the court's rule-of-lenity conclusion was dicta, as it was "confident that the investigation [in that case] plainly was not an 'official proceeding[,]'" but "alternatively h[e]ld that the rule of lenity require[d]" that the "official proceeding" definition did not "embrace the agency investigation at issue here." *Id.* at 464. An alternative holding covering a different "official proceeding" definition sheds no light on the issue in this case.

the obstruction statute's application in his case was "not expressly anticipated by Congress" were correct, that alone "does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020) (internal quotation marks and brackets omitted). That is so even if the statute's application in a particular case "reaches 'beyond the principal evil' legislators may have intended or expected to address." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)). If the policy considerations (Mot. 13-14) that the defendant advances for a narrowed view of the statute "suggest that the current scheme should be altered, Congress must be the one to do it." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 778 (2020).

Finally, the defendant intimates (Mot. 12-14) that, to the extent his role in interfering with the Electoral College vote certification warranted prosecution, he only should have been charged under a statute other than Section 1512. The premise and the merits of that claim are flawed. The mere fact that multiple criminal statutes apply to an individual's conduct does not render prosecution under one (or more) of those statute suspect; indeed, "overlap" is "not uncommon in [federal] criminal statutes." *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *accord Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995) (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."); *see also United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied."). And despite suggesting that the government might have prosecuted him under "[a]ny other statute criminalizing an attempt to obstruct justice," Mot. 13, the only statute the defendant identifies, 18 U.S.C. § 1505, likely does not encompass the defendant's conduct, *see* note 1, *supra*.

14

## CONCLUSION

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that the defendant's motion be denied.


Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793


By:      /s/ *Erik M. Kenerson*
Erik M. Kenerson
Christopher A. Berridge
Assistant United States Attorneys
James I. Pearce
Special Assistant United States Attorney
OH Bar No. 82960 (Kenerson)
GA Bar No. 829103 (Berridge)
NC Bar No. 44691 (Pearce)
555 4th Street, N.W., Room 11-909
Washington, D.C. 20530
202-252-7201
Erik.Kenerson@usdoj.gov
Christopher.Berridge@usdoj.gov
James.Pearce@usdoj.gov