UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-52 (TJK) |
| v. : | |
| : | |
| DOMINIC PEZZOLA, : | |
| : | |
| WILLIAM PEPE,   and : | |
| : | |
| MATTHEW GREENE, : | |
| : | |
| Defendants. : | |

**UNITED STATES' OPPOSITION TO PRESS COALITION'S
MOTION TO INTERVENE**

The United States of America respectfully opposes the Press Coalition's Motion to Intervene in the government's motion for a protective order regarding discovery, to which no defendant objects. *See* ECF No. 86; *see also* ECF No. 82, ¶ 12 (noting defendant Greene's lack of objection) and ECF No. 87 (noting defendant Pezzola's lack of objection).[1] The Press Coalition lacks standing to object to this protective order covering discovery between the parties, and the concerns raised by the Press Coalition's motion lack merit. The Proposed Protective Order submitted by the government (ECF No. 82-1)—contrary to the Press Coalition's representations—complies with the Local Rules and provides adequate assurances that the Court can safeguard the common-law right of access to judicial records.

---

[1] Defendant Pepe confirmed on the record through counsel on October 27, 2021, that he had no objection.

## The Press Coalition Lacks Standing to Object to a Protective Order

As the D.C. Circuit recently explained, although "third parties may intervene in cases for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order[,]" they "may seek disclosure only of 'public records,' which, in the context of court proceedings, are called 'judicial records.'" *League of Women Voters of the U.S. v. Newby*, 963 F.3d 130, 132 (D.C. Cir. 2020).  However, materials provided in discovery but never submitted to a court are not judicial records. *See, e.g.*, *United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) ("[T]he courts of appeals have uniformly held that the public has no common law or constitutional right of access to materials that are gained through civil discovery but neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers."). As the Eleventh Circuit has explained, "documents collected during discovery are not 'judicial records.' Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986).[2]

The cases cited by the Proposed Intervenors to support their claim of standing do not establish that Press Coalition has standing to intervene in a dispute over a proposed protective order in a criminal case. In *League of Women Voters*, cited by the defendant for press standing to challenge "confidentiality orders," the order at issue, which required the parties in a civil case to keep the results of a deposition confidential until privilege questions could be litigated, is nothing like a protective order governing discovery in a criminal case.  *See League of Women Voters*, 963

---

[2] To the extent that the Proposed Intervenors might have standing if any CCV (closed-circuit video) footage designated as "sensitive" or "highly sensitive" pursuant to the Proposed Protective Order is later submitted to the Court, the issues they raise are not ripe for the Court's consideration because no such footage has been submitted to date in this case.

F.3d at 134. The Press Coalition's claim that "Every circuit court that has considered the question . . . has come to the conclusion that nonparties may permissively intervene for the purposes of challenging confidentiality orders" comes from a case interpreting the Federal Rules of *Civil* Procedure, not criminal. *See EEOC v. Nat'l Children's Ctr.,* 146 F.3d 1042, 1045 (D.C. Cir. 1998). *In re Guantanamo Bay Detainee Litigation*, 630 F. Supp. 2d. 1 (D.D.C. 2009), which the Press Coalition cites as standing for the proposition that the press was permitted to intervene to challenge a designation under the protective order in Guantanamo Bay "prosecutions," Mot. at 3-4, was in fact a civil habeas case, not a criminal prosecution. Indeed, the court in that case specifically allowed the intervention because the D.C. Circuit has interpreted Fed. R. Civ. P. 24 liberally. *Id.* at 5.

Fed. R. Civ. P. 24, which allows for intervention in civil case, and which was the rule at issue in all cases cited by the Proposed Intervenors in support of their position that they have standing to intervene to challenge a protective order in a criminal case, has no analogue in the Federal Rules of Criminal Procedure. To be sure, the government's position is not that the press never has a right to intervene in a criminal case—indeed, the Press Coalition intervened previously in this case with no objection from the government for the purpose of seeking judicial records— but simply that they have no right to do so where, as here, they are seeking to regulate discovery materials that have not yet been submitted to the Court and thus are in no way judicial records.[3]

---

[3] The government's filing in *United States v. Anderson*, 21-cr-215 (RC), ECF No. 28, is not the concession the Proposed Intervenors claim it is. *See* Mot. at 4. That case involved one video, which was submitted to the court as part of a dispute between the parties over whether it was covered by the protective order in that case. *See Anderson*, ECF No. 28 at 2. In that case, there was at least a colorable argument that the video at issue was a "judicial record" to which the public right of access had attached. This case, by contrast, involves an attempt by the Press Coalition to preclude entry of a protective order where there is no such colorable argument, as no CCV clips have been submitted to this Court in this case. Moreover, as detailed below, the proposed

**The Press Coalition's Objections to the Proposed Protective Order are Meritless**

Assuming *arguendo* that Proposed Intervenors have standing to challenge the order, the Court should nonetheless enter it over their objection. The Press Coalition claims that the government cannot justify its proposed protective order for three reasons, including that any CCV submitted to the Court should be noticed on the docket and not categorically sealed. *See* Mot. at 9-10. That argument fails because the Proposed Protective Order does not provide for automatic sealing. The Proposed Intervenors also claim that (1) the government's request for a protective order is contrary to its position in other Capitol breach cases, Mot. at 3-6; and (2) the government's rationale for "secrecy" no longer withstands scrutiny. *Id.* at 6-9. Neither of these claims are correct, and in any event the cases cited by the Press Coalition, as explained below, relate to videos that were potentially viewed as judicial records, not the discovery materials that are the subject of this motion.

    A. *The Proposed Protective Order Contains no Auto-Sealing Provision.*

The proposed protective order would not result in the default sealing of any judicial records and would not prevent the Press Coalition from seeking access to any videos that become judicial records. Contrary to Proposed Intervenors' representation (Mot. at 9), the proposed protective order is not identical to one recently rejected by Judge Berman Jackson. The provisions of Paragraph 4.d in the order rejected by Judge Berman Jackson read as follows:

> Court Filings. Absent prior agreement by the parties or permission from the Court, no party shall disclose materials designated as Sensitive or Highly Sensitive in any public filing with the Court. Such materials shall be submitted under seal. The Clerk shall accept for filing under seal any filings so marked by the parties pursuant to this Order.

---

protective order in this case would not give the parties *carte blanche* to file materials covered by that order under seal as the Proposed Intervenors claim.

*United States v. Lazar*, 21-cr-525 (ABJ), ECF 23, ¶ 4.d.  By contrast, Paragraph 4.d of the proposed order submitted in this case reads as follows:

> Court Filings.  Absent prior agreement by the parties or permission from the Court, no party shall disclose materials designated as Sensitive or Highly Sensitive in any public filing with the Court. Such materials shall be submitted under seal *in accordance with Local Criminal Rule 49(f)(6)*. The Clerk of Court shall accept for filing under seal any filings made in compliance with that Rule and so marked by the parties pursuant to this Order.

ECF No. 82-1, ¶ 4.d (emphasis added).  The order proposed by the government in this case would require any party seeking to file a video marked "sensitive" or "highly sensitive" to justify that request to the Court, and the Court could then rule on those requests.  Indeed, Judge Berman Jackson later signed a protective order in *Lazar* that used substantially similar language to that quoted in the government's proposed order in this case.  *See Lazar*, 21-cr-525 (ABJ), ECF No. 33, ¶ 4.d.

The exact language in the government's order has been signed by numerous judges in this District in connection with Capitol breach cases, including by this Court in *United States v. Nordean*, 21-cr-175-1 (TJK), ECF No. 103.  That language did not hinder the Press Coalition from attempting to intervene in the *Nordean* case to challenge the sensitivity designation of two CCV videos submitted to the Court in connection with that case.  *See United States v. Nordean, et. al.*, 21-cr-175 (TJK), ECF No. 176.  That motion was ultimately denied as moot because the Court granted a similar motion filed by the defendant and ordered the government to make the videos available to the Press Coalition.  *See id.*, Minute Order dated October 11, 2021.  Should any party in this case later submit CCV video or anything else labeled as "sensitive" or "highly sensitive" to this Court that constitutes a judicial record *and* that the Court decides may be properly submitted

5

under seal pursuant to LCrR 49(f)(6), the Press Coalition can seek to intervene to obtain access to any of those videos, and the Court can rule on a developed record as to those videos. The language in this order will not hinder Proposed Intervenors in seeking access to any videos submitted in the future, just as it did not in *Nordean* and has not in countless other cases arising out of the events of January 6.[4]

      B.  *The Government's Position is Consistent.*

Proposed Intervenors cite to "at least eight" pending Capitol breach prosecutions where the government "has chosen not to contest, or has withdrawn any objection to, the release of Capitol surveillance footage." Mot. at 4-5. As Proposed Intervenors are aware, in each of those eight cases, the footage at issue had already been provided to the Court in connection with a hearing. *See United States v. Jensen*, 21-cr-6 (TJK), ECF No. 40 at 2 (Press Coalition motion for access, noting, "the Government filed a request to seal a video *proposed to be submitted to the Court in advance of a hearing*" (emphasis added)); *United States v. Nordean*, 21-cr-175 (TJK), ECF No. 142 at 4 ("the government has provided the videos to the Court for its consideration"); *In re Application for Access to Certain Sealed Video Exhibits*, 21-mc-74 (EGS) (Minute Order dated July 2, 2021, referencing videos submitted in connection with a detention hearing); *United States v. Morss*, 21-cr-40-5 (TNM) (Minute Order dated July 19, 2021, noting no objection to release of video submitted to the Court in connection with a detention hearing); *United States v. Owens*, 21-cr-286 (BAH) (Minute Order dated June 23, 2021, ordering release, with consent, of videos

---

[4]   This is the only January 6 case, to undersigned counsel's knowledge, where the Press Coalition has sought to intervene to object to a protective order overall, rather than to seek access to specified exhibits or to challenge a discrete sensitivity designation. Proposed Intervenors' position would effectively allow the press to publish any and all discovery produced in this case prior to trial.

submitted in connection with a hearing regarding pretrial detention); *In re Application for Access to Certain Sealed Video Exhibits*, 21-mc-85 (CRC) (Minute Order dated June 24, 2021, granting access to videos used in connection with a detention hearing); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841 at *3-*4 (D.D.C. March 17, 2021) (referring to exhibits submitted in connection with a detention hearing); *In re Application for Access to Certain Sealed Video Exhibits* 21-mc-34 (TFH), ECF No. 8 (government withdrew objection to access to exhibits submitted in connection with a detention hearing).

The circumstances of the eight cases cited by the Press Coalition—where a discrete number of CCV videos had been submitted to a court for consideration in connection with a hearing—is vastly different than the circumstances of the Press Coalition's requests in this case, where it seeks to block the government from following the procedures that have been established and followed in virtually all Capitol breach cases.  *See* Mot. at 2 (the Court should "deny the government's motion for a protective order to the extent that it permits a "Sensitive" designation that *prohibits distribution of*, and seals CCV videos submitted to the Court") (emphasis added).  The Press Coalition is essentially seeking to prevent the government from following the procedure being followed in nearly every January 6 case.  The government's position here is consistent with every other Capitol breach case.

      C. *The* Torrens *Decision is Inapplicable to a Motion for a Protective Order*.

The defendant cites extensively to Chief Judge Howell's decision in *United States v. Torrens,* 2021 U.S. Dist. LEXIS 174997 (D.D.C. Sept. 15, 2021).  The government acknowledges that Chief Judge Howell ruled that the declaration of U.S. Capitol Police General Counsel Tad DiBiase ("DiBiase Declaration") was "simply too generalized to show a risk of prejudice from disclosure *of the five videos at issue in [that] case*." *Id.* at *18 (emphasis added).  The Chief

7

Judge's ruling in *Torrens*, however, applied to five videos, which she had determined were judicial records subject to the common-law right of access. Had those videos not been "judicial records," the common-law right of access would not have applied, and the Chief Judge would have had no occasion to opine on whether they should be released. *See id.* at *10 ("The threshold question of whether the video exhibits are judicial records subject to the presumption of public access is addressed first before turning to application of the Hubbard test, which ultimately calls for release of the video exhibits").

The materials at issue here are unquestionably not judicial records at this stage. The videos that the Press Coalition seeks to prevent the government from designating as "sensitive" or "highly sensitive" will be provided in discovery between the parties. If circumstances change, and any become judicial records, the Press Coalition can seek to intervene at that time. As noted above, discovery materials that are never submitted to the Court are not judicial records. *See, e.g.*, *United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) ("[T]he courts of appeals have uniformly held that the public has no common law or constitutional right of access to materials that are gained through civil discovery but neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers"). If any party in this case later wishes to file some piece of evidence under seal, it will be required to convince the Court that sealing is appropriate, and the Court can address any representations in that regard at the time they are made.[5]

---

[5] The Court has no basis, as part of a protective order regarding discovery, to order the parties to file a public notice on the docket when they submit video exhibits or to include a statement about their position on release. *See* Mot. at 2, 10. The Press Coalition has cited no authority in support of its request other than Chief Judge Howell's Standing Order regarding access to video exhibits, No. 21-28 (BAH), which contains no such requirement. The government is aware of the preference that such notices be filed where appropriate, and it intends to do so where appropriate and practicable. Indeed, it has already done so in this case. *See* ECF No. 76. Absent some authority indicating such orders are properly part of a protective order governing discovery, or that

The concerns expressed in the DiBiase Declaration are entirely appropriate for a protective order governing discovery, where none of the materials at issue involve judicial records, and where many hours of surveillance footage from hundreds of cameras will be provided.  *See* United States' Memorandum Regarding Status of Discovery as of October 21, 2021, ECF No. 89 at 2 (nearly 17,000 CCV files, consisting of 4,800 hours of video from 515 cameras recently produced to defense counsel across January 6 cases).  Provision of that volume of information to defense counsel and defendants—who in this case are charged with conspiring to obstruct the certification of the Electoral College vote—under strict protections is warranted by the DiBiase Declaration.  This type of voluminous discovery is a far cry from *Torrens*, where the Chief Judge found the DiBiase Declaration insufficient to prevent the release of five CCV videos, when the information in that Declaration was weighed against the common-law right of access to judicial records.  *See Torres*, 2021 U.S. Dist. LEXIS 174997 at *18.  Here, there are exponentially more videos and no countervailing common-law right to access them.  If the Court permits the Press Coalition's intervention, it should overrule their objection on the merits and enter the Proposed Protective Order.

---

there has been some issue in this case with counsel not acknowledging the submission of video evidence, the Court should decline to issue an order.

WHEREFORE, for the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the United States respectfully requests that the Court deny the Press Coalition's Motion to Intervene.

                                        Respectfully submitted,

                                        CHANNING D. PHILLIPS
                                        Acting United States Attorney
                                        DC Bar No. 415793

By:     /s/ *Erik M. Kenerson*
           Erik M. Kenerson
           Assistant United States Attorney
           OH Bar 82960
           U.S. Attorney's Office
           555 4th Street, N.W.
           Washington, D.C. 20530
           202-252-7201
           Erik.Kenerson@usdoj.gov