```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          CR Nos. 1:21-cr-00052-TJK-1
                                          1:21-cr-00052-TJK-2
v.                                        1:21-cr-00052-TJK-3

1-DOMINIC PEZZOLA                 Washington, D.C.
2-WILLIAM JOSEPH PEPE             Wednesday, October 27, 2021
3-MATTHEW GREENE,                 2:00 p.m.
              Defendants.
- - - - - - - - - - - - - - - - x
```

---

### TRANSCRIPT OF STATUS CONFERENCE
### HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
### UNITED STATES DISTRICT JUDGE

---

APPEARANCES VIA VIDEOCONFERENCE:

```
For the United States:    Erik M. Kenerson, Esq.
                          U.S. ATTORNEY'S OFFICE FOR THE
                          DISTRICT OF COLUMBIA
                          555 Fourth Street, NW
                          Suite 11-449
                          Washington, DC 20530
                          (202) 252-7201

For the Defendants:       Steven A. Metcalf, II, Esq.
                          Martin H. Tankleff, Esq.
                          METCALF & METCALF, P.C.
                          99 Park Avenue
                          Suite 2501
                          New York, NY 10016
                          (646) 253-0514

                          John M. Pierce, Esq.
                          PIERCE BAINBRIDGE P.C.
                          355 South Grand Avenue
                          44th Floor
                          Los Angeles, CA 90071
                          (213) 400-7125

                          Michael A. Kasmarek, I, Esq.
                          KASMAREK LAW OFFICE, PLLC
                          440 East Washington Street
                          Syracuse, NY 13202
                          (315) 552-5620

Court Reporter:           Timothy R. Miller, RPR, CRR, NJ-CCR
```

1                        **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  We are on the record in

3       criminal matter 21-52, United States of America v. Defendant

4       1, Dominic Pezzola; Defendant 2, William Joseph Pepe;

5       Defendant 3, Matthew Greene.

6              Present for the Government is Erik Kenerson;

7       present for Defendant 1 are Steven Metcalf and Martin

8       Tankleff; present for Defendant 2 is John Pierce; present

9       for Defendant 3 is Michael Kasmarek; also present are

10      Defendant 1, Mr. Pezzola; Defendant 2, Mr. Pepe; and

11      Defendant 3, Mr. Greene.

12             THE COURT:  All right.  Well, good afternoon to

13      everyone here.

14             I thought, on our to-do list here today, I would

15      go through and rule on Mr. Pezzola's outstanding motion that

16      I would have ruled on had we not continued our last status

17      conference; then talk a little bit about the protective

18      order that the Government has asked me to enter, talk a

19      little bit about discovery and access to discovery, and then

20      talk about where we go from here and our next date and

21      potentially set -- setting a hearing date that -- on that

22      next date for the three motions that Mr. Pepe has

23      outstanding.

24             How does that sound -- does that -- is there --

25      I'll -- of course, after we tick through the things I want

1    to address, I'm happy to address any concerns counsel for

2    the Government has or any requests from defense counsel.

3              So let me go ahead and just, then, rule on

4    Mr. Pezzola's motion.

5              Mr. Pezzola has ruled -- has moved for me to

6    reopen his pretrial detention.  That's ECF No. 65.  And on

7    September 22nd, I heard the parties on that motion.

8              As the parties will recall, I wrote a lengthy

9    opinion that I issued back in March of this year -- ECF No.

10   25 on the docket -- that explained my detention decision in

11   Mr. Pezzola's case.  I'm, of course, not going to read that

12   whole opinion today, but let me just make the point that

13   some of the key facts in my decision at that time turned on

14   Mr. Pezzola's alleged actions on January 6th, including --

15   and these are all allegations -- including his role in

16   taking a riot shield from a police officer; his use of that

17   shield to break a window on the Capitol building, which

18   allowed untold others to climb in through it and enter; his

19   wearing of an earpiece that day which, to me, suggested

20   coordination with other individuals; alleged statements by a

21   witness that Mr. Pezzola had expressed his agreement in some

22   way with others in his group who said they would return to

23   Washington, D.C., with guns soon and planned to kill people;

24   and the FBI's discovery of a thumb drive with detailed

25   instructions in that thumb drive for making homemade

1    firearms, poisons, and explosives that they found in

2    Mr. Pezzola's home pursuant to a search warrant.

3            This Court can reconsider pretrial detention at

4    any time before trial if I find, quote, That information

5    exists that was not known to the movant at the time of the

6    hearing and that has a material bearing on the issue of

7    whether there are conditions of release that will reasonably

8    assure the appearance of such person as required and the

9    safety of any other person and the community.  That's 18

10   United States Code 3142(f)(2); and a quote from United

11   States v. Bikundi, 73 F. Supp. 3d 51 at 54, a D.D.C. case

12   from 2014.  In other words, the statute requires that a

13   movant provide information that is both new and material.

14   United States v. Lee, 451 F. Supp. 3d 1 at 3 [sic], a D.D.C.

15   case from 2020.

16           Previously available information -- even if

17   material -- is not grounds to reopen a detention hearing.

18   That's the aforementioned Lee case at 5.  And any new

19   information is only material if it is, quote, Essential to,

20   or capable of significantly affecting, the detention

21   decision, closed quote.  That's United States v. Worrell,

22   2021 WL 2366937 [sic] at Page 9, a D.D.C. case from June 9th

23   of this year; and I'll also cite for that proposition the

24   Lee case at 5 in which the court stated that, for the

25   purpose of reopening a detention hearing, information has a

1       material bearing on detention if it, quote, Casts different

2       light on any of the Bail Reform factors, closed quote, and

3       that case also cited Black's Law Dictionary from 2019 which

4       defined "material" as, quote, Having some logical connection

5       with the consequential facts, closed quote, or of, quote,

6       Such a nature that knowledge of the item would affect a

7       person's decision-making; significant; or essential, closed

8       quote.

9               Under the Bail Reform Act, courts consider whether

10      the following fact- -- courts consider the following factors

11      in determining whether some condition or combination of

12      conditions will reasonably assure the community's safety or

13      the defendant's appearance at trial and pretrial hearings:

14      the nature and circumstance -- one, the nature and

15      circumstances of the charged offenses; two, the weight of

16      the evidence against the defendant; three, the history and

17      characteristics of the defendant; and, four, the nature and

18      seriousness of the danger to any person or to the community

19      that would be posed by the defendant's release.  That's 18

20      United States Code 31 -- Section 3142(g).  And I'll cite a

21      number of cases that lay that out, as well.  That's the

22      Bikundi case I mentioned a moment ago at Page 133; as well

23      as United States v. Hong Vo, 978 F. Supp. 2d 41 and 43 at

24      Note 1, a D.D.C. case from 2013.

25              Mr. Pezzola has raised issues in support of his

1    motion that I think fall into five categories.

2            First, he raises various concerns with his

3    conditions of confinement, in due -- in part due to measures

4    the D.C. Jail has taken to prevent the spread of the

5    COVID-19 virus.  To some degree, these are matters that he

6    might not have fully known about when he first moved for

7    release.  So they might be considered new.  But the reality

8    is they have nothing to do with the BRA factors that I

9    outlined a moment ago: the nature and circumstances of the

10   charged offenses; the weight of the evidence; the history

11   and characteristics of the defendant; and the nature and

12   seriousness of the danger to any person or the community

13   posed by his release.  Thus, they are not material to the

14   detention decision under the BRA.  Mr. Pezzola cites no case

15   in which a court has considered conditions of confinement

16   when applying the BRA factors, even if he does point out in

17   a supplement that a bill has been introduced in the House of

18   Representatives that might allow for that.

19           Some of these issues might well impact his right

20   to adequately consult with his attorneys and prepare for

21   trial, and if that's true, I'll have to address those in

22   some way.  But I can't yet reach that conclusion, and mostly

23   I can't reach that conclusion because at the hearing,

24   Mr. Pezzola's attorneys conceded that they had not even

25   tried to use the procedures in place for him to review

1    electronic evidence, nor had they brought those concerns --

2    their concerns to the Government, which might be able to

3    alleviate the situation in some way.

4              So to the extent that Mr. Pezzola raises these

5    issues that might impact his right to assist in his

6    defense -- and he does request in his motion a laptop as

7    relief along these lines -- I'm going to deny the motion,

8    but I'm going to deny it without prejudice.  And I'm review

9    -- I'm going to revisit that request once he tries to use

10   the procedures and policies the jail has in place; once the

11   parties have engaged on these issues some more.  And I'll

12   note that I know the Government, in their update regarding

13   discovery, has laid out the efforts they're making not only

14   on discovery but on this particular issue in general, and I

15   think citing indeed a meeting last week and a meeting, in

16   fact, today -- I don't know whether it's happened already --

17   with the Department of Corrections and other stakeholders on

18   this issue.  In any event, without at all finding that

19   what's being done so far is adequate, but at this point, I

20   can't -- certainly, number one, can't consider this as part

21   of the BRA factors; and, number two, I want to see what

22   fruits these efforts will -- are going to provide before,

23   for example, granting specific release that -- relief that

24   Mr. Pezzola requests in his motion.  However all of that

25   plays out, again, as I said, these considerations don't

1   suggest anything new and material that affects the BRA

2   factors.

3             The second two categories of information he raises

4   are, unlike the first, closely tethered to the BRA factors.

5   They are the nature and circumstances of the charged

6   offenses and the history and characteristics of the

7   defendant.  But nothing that Mr. Pezzola raises, including

8   the representations he made under seal, are both new and

9   material in the offense -- in the sense that it would affect

10  my prior determination.  For example, one of his -- that one

11  of his co-defendants isn't detained is not new or material,

12  since I'm charged with making an individualized decision as

13  to him.  And his argument about the strength of the evidence

14  as to whether, for example, he took the riot shield from a

15  police officer or merely picked it up off the floor, in

16  light of the video evidence that's been provided to me, is

17  neither new nor material, as well.  Nothing about what he

18  presents as part of his history or characteristics is new or

19  material either.  Perhaps the closest he comes is an

20  additional clarification about what his common-law wife

21  would be willing to accept as collateral to assure -- ensure

22  his compliance with his conditions, but for the reasons I

23  already explained in the opinion in Footnote 7, that does

24  not material affect -- materially affect my decision to

25  detain him.

1            The fourth factor he cites are many other cases of

2    all stripes in which defendants have been released.  Many of

3    them are charged with far different offenses; many in other

4    cases around the country, including state courts.  And

5    during argument on the motion, he added a number of January

6    6th cases in this court as well, again, for which defendants

7    have been released pretrial.  He argues that these cases

8    suggest that his due process or his equal protection rights

9    have been violated in some way.  But there is simply no

10   support for this proposition, because I am tasked with

11   making an individualized determination as to Mr. Pezzola in

12   this case.  Whatever a judge found in a different court

13   about a different defendant, charged with different crimes

14   and applying different law, simply doesn't say anything

15   about the outcome here.

16           And last, Mr. Pezzola asked me not to consider the

17   obstruction charge under 1512(c)(2) in my analysis.  Again,

18   this argument was fully available to him when he first moved

19   for his release.  So it is not new.  It also -- it doesn't

20   -- it's also meritless, as the BRA requires me to consider

21   charged offenses.  To the extent Mr. Pezzola thinks the

22   evidence for that charge is weak, I've already considered

23   the strength of the evidence in my original decision.  And

24   to the extent that he thinks that count is legally deficient

25   in some way, he can move to dismiss it, but he has not done

1    so.

2              So I do find that Mr. Pezzola has not shown that,

3    quote, Information exists that was not known to the movant

4    at the time of the hearing and that has a material bearing

5    on the issue whether there are conditions of release that

6    will reasonably assure the appearance of such person as

7    required and the safety of any other person and the

8    community.  Thus, I will decline to reconsider my earlier

9    decision as to his pretrial detention.

10             All right.  That on the record, I guess the next

11   thing I wanted to raise with the parties is the protective

12   order that there's been certain activity on the docket

13   about.  My understanding is that Mr. Pezzola and Mr. Greene

14   have agreed to that protective order.  Do I -- does counsel

15   for Mr. Pepe want to put on the record -- I think I ordered

16   Mr. Pepe, if he opposed it, to file something on the docket

17   as of a few days ago, and I don't see anything there.  So

18   can counsel for Mr. Pepe just confirm for me that he has no

19   objection to the entry of that protective order.

20             MR. PIERCE:  Correct, Your Honor.  We have no

21   objection to that.  I apologize for not getting that --

22   something in sooner.

23             THE COURT:  All right.  Very well.

24             Now, I just -- Mr. Kenerson, I'll just note there

25   -- and I'm sure you did, as well -- that there's -- the

1    press coalition has moved to intervene and to -- and has

2    objected in some way to the entry of that protective order,

3    and I've asked the Government to respond to that, I think,

4    by the end of the week.  I think by Friday.  Have you --

5    this is the first time I've experienced the press not

6    seeking material that was the subject of a hearing that one

7    party or the other made, you know -- made part of the record

8    and that was linked to a decision that a court might have

9    made in which there -- they have a recognized public

10   interest in.  Is -- has this -- just out of curiosity,

11   number one, has this played out this way in any other cases

12   you're aware of?

13           MR. KENERSON:  I'm not aware of any, Your Honor.

14   And I've spoken to some of the people supervising the

15   discovery process and the release of information process in

16   connection with the hearings that has been going on from our

17   office.  They're not aware of any challenge of this nature

18   from the press coalition yet.  So yeah, I -- whether there

19   is one that fell through the cracks, I don't know, but I'm

20   not aware of any at this point.

21           THE COURT:  Okay.  I mean, so I'm going to, you

22   know, let the Government put something down on paper and

23   decide, and I don't -- putting the intervention question to

24   the side, I just don't see how they have -- they're going to

25   be able to carry the day here, but -- and I'll read their

1    papers, I'll read what you've filed, but obviously to the

2    extent things you produce -- and I'm sure the Government

3    would be the first to concede -- that to the extent

4    information that you produce to the defendants ends up being

5    part of a contested hearing, that is fair game for at least

6    a claim that there's a public interest in disclosing it even

7    if the parties seek to have it kept under seal, but I've

8    never heard of a situation where the press has sought to

9    intervene to -- in the process of simply giving discovery to

10   a defendant and, as part of that process, the parties

11   agreeing to a protective order that characterizes certain

12   pieces of evidence in a particular way, all of which can be

13   challenged down the road if indeed the information plays a

14   role in a public part of the case.  So I'm -- that I haven't

15   granted it, I guess, doesn't -- I've asked the Government to

16   respond.  If you will respond, I'll read what you file, and

17   we'll go from there on that.  But at least I now know that

18   all the parties have no objection to my entering that.

19              Why don't -- Mr. Kenerson, why don't you give me a

20   -- let me ask -- let me put it this way.  Moving on to the

21   third topic of discovery and the defendants' access to

22   discovery, I've read the report you've filed -- I guess it

23   was -- yesterday regarding the status of discovery, sort of,

24   generally and, again, was particularly interested in the

25   part about incarcerated defendants on Page 4 which,

1      obviously, given where we left things off with Mr. Pezzola

2      and his counsel, I'm sure, is quite -- of quite -- of great

3      interest to them.  So can you -- is there anything you want

4      to update me on after the, you know -- after you've filed

5      this report at least on that aspect of it or in any other

6      aspect of where things are on discovery?

7                  MR. KENERSON:  Certainly.  Thank you, Your Honor.

8                  And as to where the Court left off, I do not have

9      an update.  I don't know whether that hearing that the Court

10     -- or not -- excuse me, not hearing -- meeting that the

11     Court referenced earlier that was scheduled for today --

12     whether it has happened yet.  I have -- if it has happened,

13     I haven't gotten a readout of it yet.  So I don't have

14     anything additional to provide on that front but would note,

15     of course, that I think that the efforts outlined in the

16     update show that the Government is aware of the issue with

17     access to information for defendants at the jail and is

18     trying to proactively come to a solution.

19                 In terms of individual discussions with counsel

20     for Mr. Pezzola, I did speak to Mr. Metcalf yesterday about

21     whether there's anything that the Government can do to

22     assist on that front.  I -- without getting into the details

23     here, I did tell him that I was willing to talk to some

24     folks around here about whether there's any way we can

25     assist or not.  As I told him, I didn't know whether we

1    could, but we are going to see if there's anything that we

2    can do, and -- but we are, of course, very aware that

3    Mr. Pezzola needs to have access to the discovery in this

4    case in order to be able to mount a defense.

5              THE COURT:  All right.  Very well.  I'm, sort of,

6    surprised it took the parties until -- I mean, given the

7    discussion we had the last time, I'm, sort of, surprised it

8    took the parties until yesterday to connect on that, but so

9    be it.

10             Is there anything -- well, let's put it this way.

11   Why don't I hear from counsel for Mr. Pezzola.  It sounds

12   like you've talked to the Government yesterday.  They've

13   laid out in their report that their efforts to, number one,

14   you know, move things forward with regard to discovery

15   generally, but in particular to try to figure out some

16   additional capacity for your client to be able to access

17   evidence -- I -- since you all just touched base yesterday,

18   I guess there's not much to really report other than it

19   seems like, from that report, there are some promising steps

20   they're interested in making available to defendants

21   generally, but also in particular with your defendant, and I

22   suppose you'll just have to let me know how things play out

23   over time.  But is there anything you want to add?  I don't

24   know whether it's -- whichever counsel wants to address

25   that.

1          MR. TANKLEFF:  So Your Honor, I -- in support of

2     Your Honor's position before, I sent a letter to Department

3     of Corrections with a proposal of what we thought was fair

4     and equitable.  They have referred it to the U.S. Marshals,

5     because what we proposed was a deviation from the current

6     DOC policy.  And we still haven't heard back from anybody in

7     response to that, and that's probably going on probably 10

8     days now since I finally got that answer back, because some

9     of the issues we proposed were no -- not waiting for a

10     client to be on a waiting list; not being limited to two

11     weeks for access to a laptop; not having to wait for weeks

12     for a videoconference call -- legal conference call with our

13     client.  So we're still waiting from [sic] some answer from

14     the U.S. Marshals on that issue.

15          THE COURT:  All right.

16          MR. METCALF:  Your Honor --

17          THE COURT:  Let me --

18          MR. METCALF:  If I may, Your Honor, Steven --

19          THE COURT:  Yeah.

20          MR. METCALF:  -- Metcalf.

21          With regards to the conversation that happened

22     yesterday, there have been other conversations and various

23     other steps that we've been taking.  Yesterday's

24     conversation focused more on, without going into detail

25     specifically, anything that the Government can do that can

1    assist us.  So the --

2              THE COURT:  Okay.

3              MR. METCALF:  -- it wasn't as if we've been

4    sitting around waiting since the last time that we spoke and

5    just spoke yesterday.  That was on a specific detail -- that

6    was a detailed conversation about a plan or assistance going

7    forward.

8              THE COURT:  All right.  Well, I just don't want

9    this to be ships passing in the night in the sense that

10   you're -- you've sent this letter to the marshals -- or the

11   Department of Corrections referred to the marshals.  Fine.

12   In the meantime, you know, the Government -- the prosecutors

13   here are representing to me that they're, you know -- again,

14   to all of us -- but in their update, talking about, you

15   know, starting pilot programs -- starting the potential for,

16   you know, a pilot program where they're -- they are

17   undertaking efforts in a similar vein.  I just -- I guess my

18   point is you all should make sure you're in touch and in

19   communication so that these aren't, you know -- these aren't

20   ships passing in the night.  And to the extent this, kind

21   of, pilot program is able to be initiated, while it may not

22   be exactly what you've asked for with regard to your client,

23   it may well be something that can greatly alleviate the --

24   your client's situation in terms of having access to

25   discovery.  And, again, you know, the Government is, you

1    know, hopefully moving forward.  I mean, the prosecutors are

2    at least making efforts to try to alleviate that.  So I

3    encourage you, again, not to let your efforts, sort of, be

4    ships passing in the night.

5          My -- I guess the only -- the next thing I was

6    going to do is talk about a next date and a potential --

7    and, at that time, potentially hearing from counsel for

8    Mr. Pepe on the outstanding motions.  But let me talk to --

9    let me hear from the Government first about what they think

10   a -- whether they've talked to counsel for each defendant

11   about a next date and what they -- where they want to go

12   from here and then, of course, I'll hear from each defense

13   counsel.

14         MR. KENERSON:  Thank you, Your Honor.

15         Yes, I've -- I have spoken to Mr. Metcalf as well

16   as Mr. Kasmarek about potential next dates.  I have not yet

17   had a chance to connect with Mr. Pierce.  So I don't know

18   his position.  But it -- we're suggesting that we come back

19   for another status hearing sometime early in the new year

20   and continue to toll time in the interim for all the reasons

21   previously stated, including the forthcoming office-wide

22   discovery and to allow counsel to review that.  And it's my

23   understanding that Mr. Greene and Mr. Pezzola, through

24   counsel, don't object to proceeding in that fashion.  Again,

25   as I said, I don't know about Mr. Pepe's position.

```
1              THE COURT:  All right.  And is there a -- what is

2      your -- well, let's put it this way.  I mean, I guess I'll

3      ask Mr. Pepe's counsel.  But does the Government have any

4      problem, at that time when we come back, my hearing argument

5      on the outstanding -- the three outstanding motions that

6      Mr. Pepe has?

7              MR. KENERSON:  No, certainly not with respect to

8      the motion to dismiss.  The other two, we're happy to argue.

9      I think that those are motions that are traditionally argued

10     closer to trial, but nonetheless, if the Court wants to hear

11     argument on them, we are happy to do so.

12             THE COURT:  One was a -- I just looked at this

13     before.  I know there's a motion to dismiss one of the

14     counts.  There's a motion to transfer, as I recall.  And

15     what was the additional motion?

16             MR. KENERSON:  Motion to sever defendants.

17             THE COURT:  Correct.  Yeah.  That is a good point.

18     Particularly the motion to sever probably doesn't

19     necessarily make sense for me to rule on it so far out or so

20     far from when the trial might be.

21             All right.  Let me hear, then, from, I guess,

22     Mr. Metcalf and Mr. Tankleff first about the idea of coming

23     back in early January and tolling speedy trial until we come

24     back.  And I'll just say, this would be without prejudice,

25     frankly, if -- I'm -- let me put it this way.  I'm open to
```

```
 1    if you all want to make me -- make -- or ask me to make the
 2    Government file updates about the status of efforts to get
 3    your client hooked up with increased access to the materials
 4    he needs or if the parties want to jointly file something
 5    between then and now.  In other words, we can -- just
 6    because we come back in early -- whenever we come back, and
 7    if you all agree to toll speedy trial during that time, it
 8    seems to me that doesn't preclude me from trying to make
 9    sure we have -- I get information over time -- over, you
10    know -- as -- information and reports during that time to
11    make sure things are moving forward in a way you would like,
12    and if they're not, that you all can always contact chambers
13    or file a motion or contact chambers if you -- jointly with
14    the Government and request that you come in sooner if things
15    aren't moving the way you want.  So in any event, I'll hear
16    from you all.
17              MR. METCALF:  Thank you, Your Honor.  Steven
18    Metcalf.
19              In regards to -- or in addition to what Your Honor
20    just stated, there are various different aspects of what we
21    have to do with Mr. Pezzola going forward that are going to
22    take up a lot of time; that are going to essentially need --
23    we need some time to be able to do and complete each one of
24    those steps that we're going to be looking to do after today
25    and after Your Honor's decision.  So to come back for a
```

1    status conference in January, I do not object to, because I

2    know that if there are issues, we could very easily contact

3    the Court; we could try to move up that date.  I'm not

4    concerned about that.  I'm concerned about all the aspects

5    of what we need to do going forward behind the scenes

6    without judicial intervention.  And to basically -- to put

7    it lightly, after November, I know our calendars get crazy.

8    There's the holidays.  So January does make sense.  And in

9    light of just the amount of discovery and everything else

10   that we need to partake on, we have no objection, and we

11   will agree to toll until such time.  So I appreciate Your

12   Honor for taking the time to go through that as well,

13   because I want Mr. Pezzola to understand that if we do

14   foresee any issues that we could very easily come back to

15   the Court.

16              THE COURT:  You can, and you should.  You can, and

17   you should.

18              MR. METCALF:  Exactly.

19              THE COURT:  All right.

20              MR. METCALF:  And I will defer to Your Honor as

21   far as how you would want status updates.  I think that that

22   is -- that has been going well, and if Your Honor wants it

23   to be jointly done, I have no problem doing that.  So I

24   would defer to Your Honor on how you want the status updates

25   to be either from just the Government or to be jointly

1    filed, and I would ask for a status update to be essentially

2    submitted to the Court within the next 45 days which --

3              THE COURT:  All right.  Let me hear from counsel

4    for Mr. Pepe.

5              MR. PIERCE:  Yes.  Thank you, Your Honor.

6              We do not object to another status hearing early

7    in the year.  And we're happy to argue any or all of the

8    motions at that time as Your Honor sees fit.  And we do not

9    object to tolling the Speedy Trial Act.  So I don't think I

10   have anything else to add, if that covers it.

11             THE COURT:  All right.  Mr. Kasmarek?

12             MR. KASMAREK:  Judge, thank you.

13             No, we don't have an objection.  I did speak with

14   Mr. Kenerson about this issue this week.  The discovery that

15   we've received has certainly been voluminous and

16   satisfactory to us.  My conversations with Mr. Kenerson have

17   been happening on a regular basis --

18             (Brief pause.)

19             THE COURT:  All right.  Let's pick -- let's go

20   ahead and pick a date first --

21             MR. KENERSON:  Your Honor, I'm not sure if we

22   still have -- I'm sorry to interrupt.  I'm not sure if we

23   still have Mr. Kasmarek.  It looks --

24             THE COURT:  Oh, I thought he --

25             MR. KENERSON:  It looks like --

```
 1              THE COURT:  You're right.  Now that I look at the
 2      screen, he is frozen, and he didn't -- it didn't freeze in
 3      mid-word and it actually froze at a point in time where I
 4      thought he had just stopped.  All right.  Let's -- well, I
 5      think -- let's put it this way.  We're not going to decide
 6      anything until he comes back, but given what he had said, I
 7      still think looking at a date is what makes sense.
 8              Mr. Kasmarek, we have you back.  We lost you there
 9      for a moment, but I think -- I -- you may have stopped
10      talking.  I'm not sure.  But -- and I don't know -- I guess
11      I don't know the last word you said.  But anything you want
12      to add?  I mean, I think you had said, again, you were
13      pleased with the pace of discovery, your conversations with
14      the Government counsel, and I think you said you had no
15      objection to coming back in early January.
16              MR. KASMAREK:  Right, Judge.  And, again, just so
17      Mr. Greene hears this, certainly, Judge, we have heard you
18      regarding our ability to come back to chambers should an
19      issue arise.  We appreciate that, and that's certainly
20      something that we will do should the need arise.  So we're
21      prepared to consent to the adjournment and the tolling of
22      the time today.  Thank you.
23              THE COURT:  All right.  So I think the next thing
24      -- let's just pick a date here.  The date that I'm looking
25      at is Tuesday, January 11th.
```

1          I guess, Ms. Harris, can you tell whether we would

2     have availability on that date to have everyone with us we

3     need to?

4          THE DEPUTY CLERK:  Yes, Your Honor.  There is

5     availability, and because Mr. Greene is located at Northern

6     Neck, the hearing will need to be at either 2:00 p.m. or

7     3:00 p.m.

8          THE COURT:  All right.  So let's -- how does 2:00

9     p.m. work for you, Mr. Kenerson?

10          MR. KENERSON:  2:00 p.m. is good for me, Your

11     Honor.  The one caveat I would add is that it -- there's a

12     pretty good chance that James Pearce from my office would

13     argue the motion to dismiss on 1512.  If, for some reason,

14     that does not work for him, we may come back to the Court

15     with a motion to seek a new date, but with that caveat, I'm

16     fine setting it then.

17          THE COURT:  All right.  And I -- I'll, you know --

18     given what you mentioned about the other two motions, I

19     think what I will simply do is let the parties know -- let's

20     put it this way.  If I'm going to seek -- if I am going to

21     hear argument at that time on that motion in particular or

22     any motions, we'll advise the parties in advance.  At -- for

23     this point -- at this point, we'll just set it for a status,

24     and if I -- if that changes, we'll let you all know in

25     advance.

```
 1                   Counsel for Mr. Pezzola, 2:00 o'clock on the 11th?
 2              MR. TANKLEFF:  Your Honor, it's Martin Tankleff.
 3     Yes, it works for us.
 4              THE COURT:  All right.  Mr. Pierce?
 5              MR. PIERCE:  Yes, Your Honor.  That's fine.
 6              THE COURT:  Mr. Kasmarek?
 7              MR. KASMAREK:  Judge, I am likely to be in trial
 8     that week in state court here at Syracuse.  Mr. Spano is in
 9     the process of getting his application in, and I believe
10     he'd be able to have his notice in by that date and he
11     should be able to cover it.  So that's fine by me.
12              THE COURT:  All right.  Very well.
13                   And what I am going to also simply order is let's
14     say by, oh, December 3rd -- Mr. Kenerson, can I just ask you
15     to file a memorandum similar to the one you filed just
16     yesterday regarding the status of discovery, but one that
17     specifically just lays out what steps have been taken in
18     general and in -- and to the extent they occur in general
19     and with regard to any of the defendants in this case and in
20     particular Mr. Pezzola who's raised this issue quite
21     clearly, just, sort of, an update as to the section of
22     you -- of this memorandum that you filed regarding
23     incarcerated defendants so I can know what has happened
24     between then and now with regard -- again, generally, and
25     then with regard to these defendants and the efforts of the
```

1   parties to make him -- to allow Mr. Pezzola and the other

2   incarcerated defendants to have access to that material.  I

3   mean, that will only give me one side of it, what the

4   Government has done, but I hope -- let me put it this way.

5   I hope counsel for Mr. Pezzola will be in touch with you,

6   and anything that you know of that -- anything about their

7   efforts that you're aware of, you can put in that updated

8   memorandum.

9             MR. KENERSON:  Yes, that is not a problem, Your

10  Honor.

11            THE COURT:  All right.

12            So then I will find the time, then, between

13  today's date and January 11th to be excludable under the

14  Speedy Trial Act because the time -- the ends of justice

15  that are served by taking such action outweigh the best

16  interests of the public and the defendant in a speedy trial.

17  I'm doing so here with the consent of all three defendants

18  and to give them the opportunity to continue to receive and

19  review all of the voluminous discovery in this matter and to

20  consult with their clients and with counsel and to determine

21  best how to proceed going forward.  I'm also doing so

22  because in light of the limited capacity of the courthouse

23  during that period of time, as laid out in Chief Judge

24  Howell's Standing Order 21-47 which lays out, because of the

25  COVID-19 pandemic, the limited availability of the

1    courthouse to host jury trials and, in particular, a case

2    like this in which we have three co-defendants, the very

3    limited ability of the courthouse to entertain a trial with

4    multiple co-defendants during that period of time.  And I do

5    adopt in this case, if I haven't before, the factual

6    findings that are laid out in Standing Order 21-47.  So for

7    all those reasons, the Speedy Trial Act will be tolled from

8    now until January 11th.

9            Mr. Kenerson, is there anything further you think

10   I need to address here today?

11           MR. KENERSON:  No, not on behalf of the

12   Government.  Thank you, Your Honor.

13           THE COURT:  All right.  Mr. Tankleff?

14           MR. TANKLEFF:  Nothing, Your Honor.  Thank you.

15           THE COURT:  All right.  Mr. Pierce?

16           MR. PIERCE:  Nothing else, Your Honor.  Thank you

17   very much.

18           THE COURT:  All right.  And, Mr. Kasmarek?

19           MR. KASMAREK:  No, Judge.  Thank you.

20           THE COURT:  All right.  I'll look for that report

21   on December 3rd, and until -- and apart from that, the

22   parties are dismissed until December -- until January 11th.

23           (Proceedings concluded at 2:47 p.m.)

24               * * * * * * * * * * *

25           **CERTIFICATE OF OFFICIAL COURT REPORTER**

1        I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify

2    that the above and foregoing constitutes a true and accurate

3    transcript of my stenographic notes and is a full, true and

4    complete transcript of the proceedings to the best of my

5    ability, dated this 17th day of November 2021.

6        Please note:  This hearing occurred during the COVID-19

7    pandemic and is, therefore, subject to the technological

8    limitations of court reporting remotely.

9                       /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                             Official Court Reporter

10                        United States Courthouse
                             Room 6722

11                        333 Constitution Avenue, NW
                             Washington, DC 20001

12

13

14

15

16

17

18

19

20

21

22

23

24

25