```
                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA              CR Nos. 1:21-cr-00052-TJK-1
                                              1:21-cr-00052-TJK-2
       v.
                                      Washington, D.C.
1-DOMINIC J. PEZZOLA                   Wednesday, February 2, 2022
2-WILLIAM JOSEPH PEPE,                 11:00 a.m.
                    Defendants.
- - - - - - - - - - - - - - - - - x
```
_____

                  TRANSCRIPT OF STATUS CONFERENCE
           HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                   UNITED STATES DISTRICT JUDGE
_____

APPEARANCES VIA VIDEOCONFERENCE:

```
For the United States:   Erik M. Kenerson, Esq.
                         U.S. ATTORNEY'S OFFICE FOR THE
                         DISTRICT OF COLUMBIA
                         555 Fourth Street, NW
                         Suite 11-449
                         Washington, DC 20530
                         (202) 252-7201


For the Defendants:      Steven A. Metcalf, II, Esq.
                         Martin H. Tankleff, Esq.
                         METCALF & METCALF, P.C.
                         99 Park Avenue
                         Suite 2501
                         New York, NY 10016
                         (646) 253-0514


                         John M. Pierce, Esq.
                         PIERCE BAINBRIDGE P.C.
                         355 South Grand Avenue
                         44th Floor
                         Los Angeles, CA 90071
                         (213) 400-7125


Court Reporter:          Timothy R. Miller, RPR, CRR, NJ-CCR
                         Official Court Reporter
                         U.S. Courthouse, Room 6722
                         333 Constitution Avenue, NW
                         Washington, DC 20001
                         (202) 354-3111
```

Proceedings recorded by machine shorthand; transcript produced
by computer-aided transcription.

2

1          **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  We are on the record in

3      Criminal Matter 21-52, United States of America v. Defendant

4      1, Dominic J. Pezzola; and Defendant 2, William Joseph Pepe.

5              Present for the Government is Erik Kenerson;

6      present for Defendant 1 are Steven Metcalf and Martin

7      Tankleff; present for Defendant 2 is John Pierce; also

8      present are Defendant 1, Mr. Pezzola; and Defendant 2,

9      Mr. Pepe.

10             THE COURT:  All right.  Well, good late morning to

11     everyone here on the line.

12             We are here for a status conference in this matter

13     with regard to Mr. Pepe and Mr. Pezzola.  And we've had,

14     since -- I think, since we've been in court on this case,

15     we've had the other originally charged defendant resolve his

16     case short of a trial.

17             My thought today on what we could go ahead and

18     accomplish, I did want to go ahead -- and I'm sure,

19     Mr. Pierce, you've seen the various rulings on the motion to

20     dismiss the 1519 -- the 1512 count.  I've denied that in at

21     least two other cases and a whole constellation of judges

22     have denied those arguments.  And so I think one of the

23     things I'd like to accomplish is just make a record and deny

24     that particular motion, and then -- since I already decided

25     those issues, and then we can all talk about where we want

1    -- where things should go from here as far as discovery and

2    what the parties want to do pointing forward.

3              Mr. Kenerson, how does that sound -- that lineup

4    sound to you?

5              MR. KENERSON:  That works for the Government, Your

6    Honor.  Thank you.

7              THE COURT:  All right.  And, Mr. Metcalf, how does

8    that sound?

9              MR. METCALF:  That works, Your Honor.

10             THE COURT:  All right.

11             MR. METCALF:  That works.

12             THE COURT:  Mr. Pierce?

13             MR. PIERCE:  Yes, Your Honor.  I mean, I

14   understand the previous rulings on the 1512 issue, you know?

15   If the Court has already considered the arguments in depth

16   and, you know, made its decision, then, you know, so be it,

17   you know?  If -- to the extent the Court would want to hear,

18   you know, any additional argument on that point, you know,

19   I'm actually not prepared to do that today, but we could do

20   that at a future date, but if the Court has already decided,

21   then, obviously, the Court has already decided and your

22   suggestion makes sense.

23             THE COURT:  Okay.  Yes.  I mean, we -- I must say,

24   I've -- not only -- I've heard argument in other cases on

25   that -- those issues, but now I have the benefit also of

1    looking at how I think at least three or -- three, four,

2    five other judges have resolved these same issues, and none

3    -- and all resolved them in the same direction.  So I don't

4    think I would benefit from any further -- from any argument

5    on it here.

6              So let me go ahead and just --

7              MR. PIERCE:  Can I -- I'm sorry to -- and I'm

8    sorry --

9              THE COURT:  Yeah.

10             MR. PIERCE:  -- to interrupt, Your Honor.  But can

11   I just clarify?  When I -- because I, you know -- I -- we do

12   have -- I do have, you know, other cases in which, you know,

13   the 1512 issue has, you know, come up and been -- moved to

14   dismiss and been ruled on.  And, certainly, in some of those

15   cases -- I'm thinking in particular a case or two in front

16   of Judge Friedrich, you know -- the -- an aspect of the

17   ruling was essentially that, wow, you know, the 1512 count

18   in the courts' minds was not ripe to be dismissed at this

19   point, but, you know, they left the door open to some

20   extent, depending on how, you know, evidence came in at

21   trial with respect to, you know, an as-applied challenge to

22   1512.  And I guess, you know -- obviously, we'll see your

23   ruling when it comes out, but I guess I'm wondering if

24   that's, sort of, the direction that you're inclined to be

25   headed, if I can ask that, if that makes sense.

1          THE COURT:  Well, let's -- let me put it this way.

2     I would say if -- based on my -- if you think, down the

3     line, that there are arguments other than the ones I'm

4     denying here or either -- or the -- based on the way

5     evidence were to come in that there's some material

6     difference to the argument you would make down the line,

7     you're free to make it.  I don't want to say that you're

8     closed off from making arguments that are similar to the

9     ones I would deny here, but if you feel like there's a basis

10    to come back and say, Judge, now that we know the evidence,

11    things are different and here's why, I think that's fair.

12    So I -- by ruling on the motion now, I guess I don't need to

13    exclude the possibility that, you know, again, you could

14    make that argument in the future if you can explain to me

15    why it's really not duplicative of the ruling I've already

16    made, if that makes sense.

17         MR. PIERCE:  Yeah, that makes sense, Your Honor.

18    Thank you very much.

19         THE COURT:  So with that caveat, I suppose, I will

20    dispose of the motion, but I -- I'll make clear, if you

21    think -- as I said, if the status quo changes in some way --

22    I mean, I suppose that would only be to know what the

23    Government's theory is more particularly or with regard to

24    the particular evidence that the Government either proffers

25    or ultimately is admitted at trial -- then I'm happy to

1    revisit that.

2              But at least at this point, before the Court is

3    Mr. Pepe's motion to dismiss Count 2 of the superseding

4    indictment which is ECF No. 48.  I'm going to deny the

5    motion at this point and explain my reasoning for that.

6              Count 2 charges Defendants Pepe, Pezzola, and

7    Greene with corruptly obstructing, influencing, and impeding

8    an official proceeding.  Specifically, it states that the

9    three unlawfully entered the Capitol grounds and the Capitol

10   building to, and did, stop, delay, and hinder Congress's

11   certification of the Electoral College vote.  In his motion

12   to dismiss, Mr. Pepe argues that the indictment does not

13   sufficiently allege that he obstructed, influenced, or

14   impeded an official proceeding because Congress's

15   certification of the Electoral College vote on January 6th,

16   2021, was not a, quote, Official proceeding, closed quote,

17   within the meaning of the statute.  And according to Pepe,

18   the certification does not qualify because it does not have,

19   quote, A quasi-judicial function.  And if "official

20   proceeding" is read to include Congress's certification,

21   Pepe argues that Section 1512(c)(2) renders 18 United States

22   Code Section 1505 superfluous and would chill the

23   constitutionally protected right to protest.

24             As I've ruled in two other cases at this point, I

25   do agree [sic], at least at this point, with those legal

1    arguments.  Section 1512 [sic] of Title 18 defines "official

2    proceeding" as it is used in Section 1512.  It specifically

3    provides that, quote, Official proceeding, means, among

4    other things, quote, A proceeding before the Congress,

5    closed quote.  And as explained in depth in my memorandum

6    opinion in support of the order denying the motion to

7    dismiss in United States v. Nordean, such a proceeding need

8    only be a series of actions that requires some formal

9    convocation.  That's -- the case there is 21-cr-175.  That's

10   -- and the opinion is ECF No. 263.  The pages are Pages 10

11   and 11.  Because Congress's certification is a series of

12   actions that requires some formal convocation, in my view,

13   it is a proceeding before the Congress and thus an official

14   proceeding.  The rule of lenity does not require a different

15   conclusion, as that doctrine only applies when there is some

16   ambiguity in the statute, and here, there is no ambiguity.

17   Again, I addressed that in depth in that opinion, as well.

18   And besides, even if a proceeding before the Congress did

19   require some quasi-judicial function, in my view, the

20   certification would still qualify because Congress's

21   certification has at least some of those features.  Again, I

22   go through this in the opinion on Page 12.  It is formal.

23   Someone presides.  There are objections.  And the process

24   does have to end with a result declared.

25            Finally, I do disagree that applying "official

1    proceeding" to Congress's certification of the Electoral

2    College vote either renders 18 United States Code Section

3    1505 superfluous or violates the First Amendment.  On the

4    superfluity argument, to be sure, Section 1505 does concern

5    obstructing a congressional inquiry or investigation.  But

6    as, again, I walked through in the opinion in Nordean, it is

7    not clear that a congressional inquiry or investigation

8    would necessarily, or inevitably, qualify as a, quote,

9    Proceeding before the Congress, as defined above.  And

10   that's Page 17, Note 6 of that opinion.  And even if there

11   was some overlap, the preference for avoiding surplusage

12   constructions is not absolute.  That's a quote from Lamie v.

13   U.S. Trustee, 540 U.S. 526 at 536, a Supreme Court case from

14   2004.  As for Mr. Pepe's First Amendment concerns, again, I

15   direct you all to the opinion in Nordean explaining my

16   reasoning in full why the First Amendment does not provide

17   any reason to dismiss Count 2, at least not at the present.

18   For purposes here, I'll just say that by focusing on

19   "corrupt" actions, Section 1512(c)(2) in general does not

20   appear to reach speech and protected free speech under the

21   First Amendment.  And, again, that's Page 30 of the opinion

22   in Nordean.

23            So for all these reasons, I will dismiss -- I will

24   deny the motion to dismiss Count 2 of the superseding

25   indictment.

1     All right.

2          MR. METCALF:  Your Honor, if I may, just before we

3     close out this topic --

4          THE COURT:  Yes.

5          MR. METCALF:  -- although this is not my

6     application, in listening to the colloquy this morning

7     between Mr. Pierce and Your Honor and having a future

8     position, I would ask, respectfully, that today's decision

9     be specifically noted that it is without prejudice as to

10    avoid any confusion in the future about whether or not it's

11    a renewal application or so on and so forth.

12         THE COURT:  Right.  Well, I don't want to -- let's

13    put it this way.  I've said -- I've denied the motion.  If

14    the parties think that there is something, again -- I mean,

15    some of these arguments, for example, very much are with

16    prejudice in the sense that the question of the construction

17    of the official proceeding -- about whether the

18    certification -- the -- Congress's certification was an

19    official proceeding, I think, is really a purely legal issue

20    and I don't know how things could change in the future that

21    would change my view of that.  But, look, as far as the

22    First Amendment concerns or -- and I, you know -- other

23    aspects of the ruling, I think it's always -- I'll just --

24    I've said it on the record before; I'll say it again.  If

25    the parties think that the ground has shifted in some way

1    and that there's some argument that now has merit because

2    either they -- either the Government's theory has become

3    clearer or they know what -- the Government has represented

4    what their evidence will be in some way or, in fact, certain

5    evidence is admitted at trial and you feel that the

6    underlying merits of some kind of argument along these lines

7    has shifted, you're always free to remake the, you know --

8    remake the argument.  I think that would be, then, a

9    different argument based on a different circumstance.  So I,

10   you know -- I'm putting it on the record that you may make

11   that argument, but I think as far as the motion goes, I'm

12   just going to say it's denied and we move on from there.

13            MR. PIERCE:  Your Honor, and, again, I'm sorry to

14   interject and keep going here, but just to, kind of, give

15   one example of what I'm thinking about specifically from a

16   couple of Judge Friedrich's decisions in cases that we have,

17   you know, I think one concern -- at least I'm reading her --

18   the oral argument with her and her opinions as a concern --

19   is that, for example, with respect to the "corruptly" issue,

20   right, is that, you know, she -- I think she did -- I

21   believe she did express some concern and some pause at the

22   notion that, for example -- because the Government took the

23   position that, sort of, any underlying crime, including any

24   misdemeanor such as, you know, trespassing, could suffice in

25   and of itself as potentially, if proven, illegal activity,

 1     and that itself would satisfy the "corruptly" aspect of the

 2     statute, you know?  She -- I think that she has some concern

 3     that that could effectively convert, you know, a Class B

 4     misdemeanor of 6 months maximum to, you know, a felony of 20

 5     years.  And so I guess I would just say, you know,

 6     obviously, to the extent that any, kind of, underlying crime

 7     that would -- that the Government believes would satisfy the

 8     "corruptly" aspect of the statute is not proven, of course,

 9     you know -- I mean, that's the -- that's just an example of

10     the kind of, you know, argument that I could foresee,

11     depending on how the evidence comes in.  So I just wanted

12     to, sort of, highlight that for the Court's sake.

13          THE COURT:  Right.  I'm now -- I'm circling back

14     on your motion just to refresh my memory about what you --

15          (Brief pause.)

16          Yeah.  I mean, I actually don't see you having

17     raised really that "corruptly" issue here exactly.  Let me

18     just say, I'm ruling on the motion.

19          MR. PIERCE:  Sure.

20          THE COURT:  If there's a -- and I've ruled on it

21     and I've denied it.  I think if there are other arguments

22     that you want to make that are, basically, a -- renewals --

23     renewal of an argument you've made here because you think

24     the factual landscape has changed in some way, you can make

25     those.  Now, if there's an argument you haven't made here, I

1    think, you know, we'll cross that bridge when we come to it.

2    The Government may want to stand up and say, No, you had

3    your opportunity to take a swing at the indictment and,

4    Judge, you shouldn't take another -- you shouldn't allow the

5    defense to take another whack at it.  But I'm not going to

6    judge that one way or the other now.  I'll just say I'm

7    going to take all of your, you know -- I'll address whatever

8    theoretical situation comes up when it comes up.  I guess

9    the only thing I want to make clear is if you -- the other

10   -- the one thing I think is clear is that if you have made

11   an argument here in this motion and think that now you want

12   to renew it later because something you didn't know now --

13   the landscape has changed in some way, I'm certainly not

14   going to preclude you from doing that.

15            MR. PIERCE:  Thank you, Your Honor.

16            THE COURT:  Okay.

17            MR. METCALF:  Thank you, Your Honor.

18            THE COURT:  All right.  Mr. Kenerson, do you want

19   to bring me up to speed on, I guess, where discovery stands

20   and if you've had discussions with the parties on where

21   they'd like to go from here in terms of how long it -- how

22   long you think -- well, just what the -- if the parties have

23   discussed a game plan going forward.

24            MR. KENERSON:  Certainly.  Thank you, Your Honor.

25            The discovery is continuing apace.  We've largely

1    moved into what we've referred to, kind of, as global

2    discovery at this point.  There have been 10 productions of

3    that so far to all counsel across the Capitol riots cases,

4    including these counsel here today.  We are also working to

5    roll out access to Evidence.com to incarcerated inmates,

6    including Mr. Pezzola, and I'll come back to that in just

7    one moment.  And we are also working on getting the

8    Relativity database for the defense stood up.  All of that

9    is, I think, close.  Now, that said, there is still a long

10   way to go before the Relativity database .com, even once

11   it's stood up, is close to complete and populated.  I expect

12   that we'll be filing another update for the Court on that

13   front either at the end of this week or at the beginning of

14   next week once there is one available to file.  But I've had

15   -- and in terms of case-specific discovery that -- collected

16   from these two defendants -- or in the investigation of

17   these two defendants and former Co-Defendant Greene, that

18   discovery is close to complete.  There's a few things still

19   being reviewed to see -- to make discoverability

20   determinations on.  And, of course, as more information

21   comes in, that will be provided on a rolling basis.  But we

22   are a long way from completion of the Relativity databases.

23   We -- and we'll have more information, I think, for that

24   later.

25                   So I've -- I have spoken to Mr. Metcalf and

1    Mr. Tankleff.  I've not yet had a chance to speak to

2    Mr. Pierce about his position.  My understanding is that

3    Mr. Tankleff and Mr. Metcalf do not want to set the case for

4    trial today.  And, of course, they can jump in and correct

5    me if I'm wrong on that front.  Based on my conversations

6    with them, we're looking to come back in about 45 days.  We

7    would ask to toll the running of the speedy trial clock in

8    the interim to allow them to review discovery that has been

9    provided so far as well as to update on the discovery that

10   is still to come and see where we are in 45 days.  I don't

11   know what Mr. Pierce's position is on that, like I said.

12           THE COURT:  All right.  You know, it's certainly

13   -- well, first of all, let me just ask Mr. Metcalf.  Does

14   that accurately reflect your views?

15           MR. METCALF:  Yes, Your Honor.  And just to add to

16   that view a little bit, there have -- first off, I have no

17   issues with obtaining discovery or working with AUSA

18   Kenerson.  He's been actually a breath of fresh air in

19   dealing with.  So I respect that and I like the way he

20   operates.  So I want that to be understood and noted.

21           There are, however, various different issues with

22   us being able to speak with Mr. Pezzola between his phone

23   being shut off and him getting moved around the jail from

24   the hole to various different places to constantly being

25   under quarantine at the drop of a dime and then with what we

1   basically indicated to the Court recently was the injuries

2   that me and Mr. Tankleff sustained as a result of a bad car

3   accident.  It has basically made it virtually impossible for

4   us to actually speak with Mr. Pezzola in a meaningful way in

5   the last 30 to 45 days with the New Year's and the holidays.

6   So I think it's appropriate under these circumstances to

7   allow us to continue to keep dealing with these issues;

8   specifically, Mr. Pezzola's status at the jail and what's

9   been going on there with quarantine and his ability to even

10  speak with us on the phone.  And during such time, it's also

11  appropriate for us to consent to tolling.  So I have no

12  issues with that; just wanted to add a little bit for Your

13  Honor.

14          THE COURT:  All right.  Before I hear from

15  Mr. Pierce, let me just say, I hope -- I wish a speedy

16  recovery to you -- to those of you who have had that car

17  accident, number one.

18          Number two, obviously, the fact that -- I mean,

19  with the rise of the Omicron variant, I think it is not

20  unexpected that -- and I've heard this across the board

21  having -- even in cases having nothing to do with January

22  6th -- that, obviously, the last 30 days has been a tough

23  situation with counsel being able to contact your client.

24  That's, unfortunately, not unexpected.  But on the other

25  hand, I think -- well, let's hope over the next 45 days, if

 1    that Omicron wave subsides, that those kind of procedures --

 2    the kind of precautions that the jail has had to take place

 3    are going to be eased.  I think we have every reason to

 4    think that's the case, but we'll see.

 5              All right.  So 45 days is the request.

 6    Mr. Pierce, what's your view of all of this?

 7              MR. PIERCE:  I think 45 days makes sense, Your

 8    Honor, to continue to, you know, review discovery, etcetera.

 9    And so we will agree to toll the Speedy Trial Act during

10    that time.

11              THE COURT:  All right.  Ms. Harris, can you give

12    me a -- can you give us a day 45 days out.

13              THE DEPUTY CLERK:  Forty-five days takes us to

14    March 19th which is a Saturday.  So either Friday, March

15    18th; or Monday, March 21st.

16              THE COURT:  All right.  Looking at my calendar

17    here, let me propose a date that's just a few days after

18    that which is March 23rd.  Do we have -- Ms. Harris, can you

19    see whether there's any -- whether there's availability into

20    the jail for Mr. Pezzola.

21              THE DEPUTY CLERK:  Yes, there's availability,

22    both --

23              THE COURT:  Okay.  So why don't we -- why don't I

24    propose March 23rd at 9:30 a.m.  I think we're all -- yeah,

25    we're all here on the East Coast.  March 23rd at 9:30 a.m.

1              Is that available for you, Mr. Kenerson?

2              MR. KENERSON:  It is, although I see Mr. Pierce

3    unmuted himself.  I think he's actually based in California.

4              THE COURT:  Oh, I did not realize that,

5    Mr. Pierce.  Sorry about that.  All right.

6              MR. PIERCE:  That's okay.

7              THE COURT:  So let me, then -- I have been

8    accommodating -- trying to accommodate whether it's

9    prosecutors, defense counsel, defendants who are on the West

10   Coast.  So -- or not on -- not in the Eastern time zone.

11   Let's put it that way.  So why don't I suggest 2:00 o'clock,

12   then, on the 23rd.  2:00 o'clock on the 23rd.

13             Is that available for you, Mr. Kenerson?

14             MR. KENERSON:  That is, Your Honor.

15             THE COURT:  All right.  And, Mr. Metcalf?

16             MR. METCALF:  That is.

17             THE COURT:  All right.

18             MR. METCALF:  That works.

19             THE COURT:  Mr. Pierce?

20             MR. PIERCE:  Yes, that works, Your Honor.  Thank

21   you.

22             THE COURT:  All right.  So we'll set it for then.

23             I actually think, technically, the -- we do have

24   the two other motions that I will certainly resolve when we

25   get closer to trial, if we get there, that Mr. Pepe has

1    filed regarding -- it's a motion to transfer and a motion to

2    sever.  So I think, actually, those motions may well toll

3    speedy trial on their own.

4         But I will just belt-and-suspenders it and find

5    that the time between today's date and March 23rd is

6    excludable under the Speedy Trial Act because the ends of

7    justice that are served by taking such action outweigh the

8    best interests of the public and the defendant in a speedy

9    trial.  I'm doing so here with the consent of both

10   defendants and for the reasons that the Government and the

11   defendants have already put on the record here.  One, to

12   allow the parties to continue to receive and review

13   discovery; and in the case of Mr. Pezzola and Mr. Metcalf,

14   to allow -- to give -- in light of the car accident that

15   Mr. Metcalf referenced and to facilitate continuity of

16   counsel, to give counsel the ability to recover, candidly,

17   from that accident.  So for all those reasons, we'll toll

18   speedy trial from now through March 23rd.

19        Anything further from the Government -- from

20   Mr. Kenerson?

21        MR. KENERSON:  Your Honor, just one thing,

22   returning briefly to what I had said about access to

23   Evidence.com as the -- at the jail.  As the Court notes --

24   or as the Court knows, excuse me, Evidence.com contains a

25   number of videos, both Capitol surveillance and body-worn

1    camera videos.  That has been made available to defense

2    counsel, and we are working on a program to unveil it for

3    inmates incarcerated at the D.C. Department of Corrections.

4              THE COURT:  Yes.

5              MR. KENERSON:  That is, of course, where

6    Mr. Pezzola is.  To get him access to that once it becomes

7    available, we'd ask if the Court would be willing to

8    admonish him on the record that he is bound by the terms of

9    the protective order that was entered in this case as he

10   reviews any sensitive or highly-sensitive materials that

11   might be contained in Evidence.com.  It does contain both

12   categories.

13             THE COURT:  All right.  Where -- what did you say

14   -- what was the docket number of the protective order?  Do

15   you have that --

16             MR. KENERSON:  I am --

17             MR. METCALF:  Your Honor --

18             MR. KENERSON:  I am looking for it.

19             MR. METCALF:  Your Honor, if I may?

20             MR. KENERSON:  92.  92.  [sic]

21             THE COURT:  Yes, Mr. Metcalf.  Yes.

22             MR. METCALF:  Okay.  So the Evidence.com and the

23   Government's position in trying to make this accessible at

24   the jail has some -- has been something that has just

25   recently come to light or that has just come to my

1    attention.  With regards to that, it, then, has now become

2    an issue that individual defendants either individually sign

3    the protective order or, as the Government so puts it and

4    requests of the Court, to admonish the defendant about that.

5    I still need more time to be able to speak to Mr. Pezzola

6    about this specific aspect of the case.  I would ask --

7              THE COURT:  All right.

8              MR. METCALF:  -- that Your Honor allows us to

9    speak to him first before we continue down this road.

10   Highly doubt that he's going to have any of this before our

11   next conference date, and if he so does and we want him to

12   address this issue with Your Honor beforehand, I have no

13   problem doing so.  I just ask that we don't do it right this

14   moment.

15             THE COURT:  All right.  Well, obviously, I think

16   it's fair -- I mean, Mr. -- I assume, Mr. Kenerson, what you

17   would, you know -- you would -- that may limit, from -- over

18   the next 45 days, the Government's comfort with producing

19   certain information to him, but if you don't -- if you would

20   rather, before I admonish him -- I'm looking at the most --

21   what I think was the most recent protective order entered

22   which I think is Document 93.  I don't know if Mr. Kenerson

23   can verify that's what he's talking about.  It does have

24   something for him.  It looks like there's, you know -- part

25   of the mechanism is for the defendant to sign it.  But if he

1    hasn't signed it yet -- and I entered that back in early

2    November.  If he hasn't signed it yet in particular and

3    Mr. Metcalf wants more time -- wants time to be able to walk

4    through Mr. -- with Mr. Pezzola the meaning of this, I think

5    it makes sense for me to hold off.

6              What do you think, Mr. Kenerson?

7              MR. KENERSON:  That's fine, Your Honor.  One thing

8    I would note is that if Mr. Metcalf is able to have the

9    conversation with Mr. Pezzola sooner than 45 days, we are --

10   he's able to -- as a -- he's able to, I think -- even if he

11   can't physically get down to be with Mr. Pezzola, if he can

12   sign on Mr. Pezzola's behalf, get us a copy, and let us know

13   he's spoken to him about it, we can hopefully get him access

14   sooner than the 45 days.

15             THE COURT:  All right.  And just so we're on the

16   same page, it's -- that is the order we're talking about;

17   right, Mr. Kenerson, just -- it's not -- what's -- what is

18   on the docket now as No. 93?

19             MR. KENERSON:  Yes, 93.  I had actually mislabeled

20   it in my filing system.  I had it as 92, but I opened that

21   up, and I see that it is, in fact, 93.

22             THE COURT:  Okay.  So 93.  And I see there -- and,

23   Mr. Metcalf, just, you know -- there is an attachment there,

24   which is Page 7, which contemplates the defendant signing

25   that, but you heard what Mr. Kenerson just said about what

1    the Government would accept in terms of you signing on his

2    behalf.  In any event, so it sounds like it -- this isn't

3    ripe for me to admonish him since he hasn't signed it yet

4    and you may not have talked to him about it at all.  So I'll

5    hold off on that.

6              Anything further for you -- from you, Mr. Pierce?

7              MR. PIERCE:  Just one minor request, Your Honor,

8    and this is probably for down the road as we get closer to

9    trial, if it does head in that direction.  As you may know,

10   I have a substantial number of these cases, and to the

11   extent that -- and, obviously, it's in the Court's

12   discretion as to whether the Court, you know, wants to hear

13   oral argument on those other two motions, the motion to

14   transfer and the motion to sever.  I would just add -- I

15   mean, certainly, we would like oral argument on those

16   motions, if possible.  That's in the Court's discretion.

17   But if the Court does see fit to have oral argument, I would

18   just respectfully request that, you know, we get a little

19   bit of heads-up to know, you know, when those would be

20   argued so that we're prepared to, you know --

21             THE COURT:  Of course.  And I think I -- in the

22   usual course, those type of motions I would deal with at a

23   pretrial conference.  So we would talk about it beforehand,

24   but absolutely.  I -- first of all, I do think it's

25   appropriate.  Those motions, I have not -- I have not

1    effectively decided those motions in other cases.  So I

2    would think that there would be no reason why I wouldn't

3    want to hear oral argument on them, and I think the most

4    efficient time to do that would be at a pretrial conference.

5    So don't -- I'm -- don't expect a ruling out of nowhere on

6    those from me, and I think you would have, you know, plenty

7    of time to argue them before me at a pretrial conference.

8              MR. PIERCE:  Thank you, Your Honor.

9              THE COURT:  All right.  Very well.  We'll see

10    everyone back here, obviously, via video on March 23rd.

11    Until then, the parties are dismissed.

12              MR. TANKLEFF:  Thank you, Your Honor.

13              THE DEPUTY CLERK:  Mr. Metcalf --

14              MR. METCALF:  Thank you, Your Honor.

15              THE DEPUTY CLERK:  -- did --

16              MR. METCALF:  Yes?

17              THE DEPUTY CLERK:  Did you still want a moment

18    with your client?

19              MR. METCALF:  Yes, I would ask if I could.  Thank

20    you very much.

21              (Proceedings concluded at 11:51 a.m.)

22              * * * * * * * * * * *

23         **CERTIFICATE OF OFFICIAL COURT REPORTER**

24      **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify**

25    **that the above and foregoing constitutes a true and accurate**

1    transcript of my stenographic notes and is a full, true and

2    complete transcript of the proceedings to the best of my

3    ability, dated this 21st day of February 2022.

4        Please note:  This hearing occurred during the COVID-19

5    pandemic and is, therefore, subject to the technological

6    limitations of court reporting remotely.

7                              /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                              Official Court Reporter
8                              United States Courthouse
                              Room 6722
9                              333 Constitution Avenue, NW
                              Washington, DC 20001

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25