UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                          )<br>)<br>WILLIAM PEPE                        )<br>)<br>         Defendant            )<br>) | Case No. 21-cr-00052-TJK |

**MOTION TO DISMISS COUNT 1 OF THE SUPERSEDING INDICTMENT**

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

COMES NOW Defendant William Pepe, by and through his undersigned counsel of record William L. Shipley, and respectfully moves this Court to

dismiss Count 1 of the indictment charging him with a violation of 18 U.S.C. Sec. 1512(c)(2).  The basis for this motion is that the scope of the conduct prohibited under 18 U.S.C. Sec. 1512(c)(2) does not reach the conduct alleged to have been engaged in by Defendant Pepe as specifically described in Count 1 of the Indictment.

> I.  Count 1 of the Indictment Should Be Dismissed as a Matter of Law As Section 1512(c)(2) Does Not Criminalize the Conduct Underlying That Count.
>
> A.  Legal Standard for Determining Motions to Dismiss As A Matter of Law.

Before trial, a criminal defendant may move to dismiss a charge based on a "defect in the indictment." Fed R. Crim. P. 12(b)(3)(B). "The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged." *United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016). The Court's analysis is limited to the language in the Indictment and the language of the statute alleged to have been violated.  *Id*. at 109-10.

Pepe challenges the application of 18 U.S.C. Sec. 1512(c)(2) as it relates to the conduct alleged in the Indictment.  This Court should exercise restraint when considering the extent to which vaguely worded statutes reach alleged criminal conduct when considering such a challenge. *United States v. Aguilar*, 515 U.S. 593, 600 (1995). The Supreme Court has urged this restraint "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will

understand, of what the law intends to do if a certain line is passed.'" *Id*. at 600. (citations omitted).

Hand-in-hand with this view of the Court's approach is the "rule of lenity" which exists to mitigate excessive sentences in situations where truly ambiguous statutes lead unsuspecting defendants into criminal activity, the seriousness of which they did not understand.  See, *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (*en banc*) (Bibas, J., concurring),

"Under the rule of lenity, courts construe penal laws strictly and resolve ambiguities in favor of the defendant," *id*., so long as doing so would not "conflict with the implied or expressed intent of Congress," *Liparota v. United States*, 471 U.S. 419, 427 (1985).

> B. Pepe's Alleged Conduct Falls Outside The Scope of <u>Conduct Clearly Prohibited Under Sec. 1512(c)(2)</u>

Section 1512(c)(2) does not apply to the conduct of Defendant Pepe on January 6 with regard to disruption of the Electoral Vote certification proceeding taking place inside the Capitol on that day starting at 1:00 p.m.

In resolving this claim, the Court must first determine what is the nature and scope of conduct that Sec. 1512(c)(2) does prohibit, and they whether the alleged conduct of Pepe falls within the scope of the statute's language given a fair reading.  In doing so, the Court must "exercise[ ] restraint in assessing the reach of a federal criminal statute," and resolve all ambiguities in favor of Pepe. *Aguilar*, 515 U.S. at 600.

> 1. The Text of Sec. 1512(c) Is Subject to Multiple <u>Interpretations</u>.

Sec. 1512(c) reads as follows:

>(c) Whoever corruptly—
>
>>(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or
>>
>>(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

Defendant Pepe, as is true with all defendants charged with violating Sec. 1512 in connection with the January 6 riot at the Capitol, is charged only with regard to subsection (c)(2).

The presence of the phrase "or otherwise" alters the phrasing of Sec. 1512(c)(2) such that it subjects to criminal sanction conduct of "whoever corruptly . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so." The meaning and influence of "otherwise" on the prior text in the statute is critical to determining the limits imposed by such phrasing – including whether it applies to the alleged actions of Defendant Pepe as charged in the Indictment based on the events of January 6 and his alleged participation therein.

Subsection (c)(2) is a "residual clause" for subsection (c)(1). It operates as a "catchall" for other prohibited conduct of a similar kind and/or nature to that conduct specifically described in subsection (c)(1). The word "otherwise" links the two subsections, but does not eliminate the need for commonality with regard to the type and nature of the conduct prescribed by subsection (c)(1).

This interpretation is consistent with the Supreme Court's decision in *Begay v. United States*, 553 U.S. 157 (2008) where the majority opinion rejected the government's argument "that the word 'otherwise' is sufficient to demonstrate that the examples – coming before "otherwise" in the statute -- do not limit the scope of the clause following the word "otherwise." *Id.* at 144 (emphasis in original). As the Court put it, "the word 'otherwise' can (we do not say must, cf. post, at [150-51] (Scalia, J., concurring in judgment)) refer to a crime that is similar to the listed examples in some respects but different in others." *Begay*, 553 U.S. at 144.

The Court held that "listed examples … indicate[ ] that the statute covers only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.'" *Id.* at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)) (emphasis in original). Justice Scalia himself understood that to be the holding, noting that the majority "read[s] the residual clause to mean that the unenumerated offenses [after "otherwise"] must be similar to the enumerated offenses not only in the degree of risk they pose, <u>but also 'in kind</u>,' despite the fact that 'otherwise' means that the common element of risk must be presented 'in a different way or manner.'" *Id.* at 151 (Scalia, J., concurring in judgment) (emphasis added).

Read correctly, Subsection (c)(2) operates only to ensure that the listing of certain specific unlawful acts in subsection (c)(1), was not meant by Congress as an exclusion from the coverage of the statute to other unspecified acts of similar nature and kind.

But the Government has made use of Subsection (c)(2) to criminalize conduct of an entirely different nature and kind from the enumerated prohibited acts in subsection (c)(1), an application that is too broad to withstand scrutiny, and has no limiting principle for purposes of statutory vagueness or overbreadth challenges.

        2.     The Statutory Context Suggests That Subsection (c)(2) Has A <u>Narrow Scope</u>.

The Supreme Court has said "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993) (quoting *United States v. Heirs of Boisdore*, 49 U.S. 113, 8 How. 113, 122, 12 L. Ed. 1009 (1850)).

The structure and scope of Sec. 1512 shows that subsection (c)(2) was meant to have a narrow focus, and not intended for a broad application to all manner of conduct unrelated in kind to "evidence impairment" prohibitions contained in the balance of the statutory text. Other subsections criminalize relatively discrete conduct happening in narrow range of factual contexts. The title of the statute is "Tampering with a witness, victim, or an informant." That title does not describe the substance of subsection (c) in the manner that it is being used by the Government in relationship to the events of January 6, and it reflects a narrow, evidence-related focus of the statute as a whole.

Subsection (a) criminalizes, among other things, killing another person to prevent the attendance of a person at an official proceeding, or using physical

force (or a threat of it) against a person with the intent to cause someone to withhold testimony from an official proceeding.

Subsection (b) focuses on verbal conduct, such as knowingly using threats with intent to influence, delay, or prevent another from offering testimony at an official proceeding.

And subsection (d) criminalizes the intentional harassment of a person which results in the person being hindered, delayed, prevented, or dissuaded from attending or testifying in an official proceeding.

Subsection (c)(1) is consistent with the balance of the statute's focus on specific and particularized actions. But instead of making unlawful an individual's action with respect to <u>another</u> person to achieve some illicit end as in subsections (a), (b), and (d), subsection (c)(1) prescribes the taking of certain actions directly by the person charged with the offense – first person conduct as opposed to third person conduct. It prohibits altering, destroying, mutilating, or concealing a record, document, or other object with intent to impair the object's integrity or availability for use. Unlike the other subsections of § 1512, it does not require action directed at another person, and the language is focuses on narrow and easily definable range of conduct.

If the scope of subsection (c)(2) is not limited by subsection (c)(1) then there would exist an internal textual inconsistency in the drafting choices made by Congress. Subsection 1512(c)(2) would be the only provision in the entirety of §1512 not focused narrowly on specific types of evidence impairment conduct that fits withing predicable factual scenarios. Inexplicably, this sudden divergence from an otherwise consistently phrased and narrowly

targeted statute comes from an amendment to a sub-subsection of a subsection nestled in the middle of an otherwise internally consistent statute. As this Court has noted, Congress does not "hide elephants in mouseholes," citing to *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

Reading subsection (c)(2) as not being limited by subsection (c)(1) renders the majority of text in Sec. 1512 superfluous as nearly the entirety of other parts of Sec. 1512 would be swallowed up by the "residual clause." Conduct made unlawful by at least eleven subsections -- Sections 1512(a)(1)(A), 1512(a)(1)(B), 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(B) (iii), 1512(a)(2)(B)(iv), 1512(b)(1), 1512(b)(2)(A), 1512(b)(2) (C), 1512(b)(2)(D), and 1512(d)(1) – would all be comprehensively criminalized by the broad interpretation 1512(c)(2) being employed by the Government here. The presence of such unexplained substantial overlap within multiple subsections of a single statute raises the question of whether that is actually what Congress intended with the language that follows "otherwise" in Sec. 1512(c)(2) as a result of the amendment.

Reading Sec. 1512(c)(1) as limiting the scope of Sec. 1512(c)(2) avoids many of the structural or contextual issues raised by detaching them from one another. Under such a reading, Sec. 1512(c)(2) operates as a catchall to the narrow prohibition Congress created in § 1512(c)(1)—not as a duplicate to nearly all of § 1512.

> 3. The History of Sec. 1512 suggests that § 1512(c)(2) <u>operates as a catchall to § 1512(c)(1)</u>

Prior to the enactment of subsection 1512(c) in 2002, Section 1512 made criminal only actions directed at other persons. Prior to amendment subsection (b)(2) provided:

> (b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to
> ....
> (2) cause or induce any person to—
> (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
> (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
> (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
> (D) be absent from an official proceeding to which such person has been summoned by legal process; . . . shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. §§ 1512(b)(1)-(2) (1996).

Other subsections similarly prohibited conduct directed at causing or influencing "another person" to take improper action. Sections 1512(a)(1) (A)-(C), 1512(c)(1)-(4). This created a gap in the framework of the statutory prohibition -- Sec 1512 made it unlawful to cause "another person" to take certain steps —such as to "alter, destroy, mutilate, or conceal an object" — but did not make it unlawful for a person to directly undertake that same action.

Adding subsection (c) fills the gap in Sec. 1512, and by drawing heavily on the language from a single provision out of four in subsection (b), Congress revealed its intent that subsection (c) have a narrow, limited focus — as is true of subsection (b)(2)(B). The difference is that subsection (c) does not include the requirement of acting through another person – it criminalizes direct

conduct. The same Congress adopted all of Sec. 1512(b)(2) in Sec. 1512(a)(2)(B) -- rather than just one sub-subsection of Sec. 1512(b)(2) -- further suggests that the enactment of Sec. 1512(c)(1) was intended to be narrow. If subsection 1512(c)(2) was as broad as the government is applying it to January 6 defendants, there would have been no need for the very same Congress to add Sec. 1512(a)(2)(B) only three months later.

                4.       The legislative history supports a narrow reading of Subsection (c)(2).

"Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it." *Milner v. Dep't of Navy*, 562 U.S. 562, 574, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011). The legislative history does not support the manner in which the Government has employed subsection (c)(2).

Section 1512(c) was enacted as part of the Sarbanes- Oxley Act of 2002, 116 Stat. 745. "The Sarbanes-Oxley Act, all agree, was prompted by the exposure of Enron's massive accounting fraud and revelation that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States*, 574 U.S. 528, 535-36, 135 S. Ct. 1074, 191 L. Ed. 2d 64 (2015) (plurality opinion). Section 1512(b) "made it an offense to 'intimidat[e], threate[n], or corruptly presuad[e] another person' to shred documents," but it did not prohibit individuals from shredding documents themselves. *Id.* at 536 (emphasis added). The Senate Report for Sarbanes-Oxley focused on this loophole:

> Indeed, even in the current *Andersen* case, prosecutors have been forced to use the "witness tampering" statute, 18 U.S.C. § 1512, and to proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying

evidence themselves. Although prosecutors have been able to bring charges thus far in the case, in a case with a single person doing the shredding, this legal hurdle might present an insurmountable bar to a successful prosecution.

S. Rep. No. 107-146, p. 7 (2002).

Section 1519 was originally introduced to plug this gap, with Section 1512(c) added later.  Yates, 574 U.S. at 535-36.  In introducing Sec. 1512(c), Senator Lott stated that the amendment's "purpose" was "[t]o deter fraud and abuse by corporate executives" — factually in line with the Enron investigation problems.  148 Cong. Rec. S6542 (daily ed. July 10, 2002).  The law at the time only prohibited obstruction of justice by a defendant acting alone, and only if a "proceeding" was pending and a subpoena has been issued for the evidence that was destroyed or altered.  Id. at S6545.  In Senator Lott's view, his amendment would fill this gap: "So this section would allow the Government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena. I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year." Id.  Then-Senator Joseph Biden confirmed that the new subsection (c) explicitly made "it a crime for document shredding" to take place, but emphasized his view that language of the pending bill did that without the addition Subsection (c).  Id. at S6546.

For Senator Orrin Hatch, the addition of § 1512(c) "closes this loophole by broadening the scope of Section 1512." Id at S6550. It "would permit the government to prosecute an individual who acts alone in destroying evidence,

even where the evidence is destroyed prior to the issuance of a grand jury subpoena." *Id.* (emphasis added).

To the extent legislative history in the form of comments on the floor of either House of Congress are relevant at all, the weight of this legislative history is inconsistent with the view that Sec. 1512(c)(2) extends beyond conduct that impairs evidence for use in later proceedings. Congress was endeavoring to address a specific and identified loophole in the existing statute by making it explicitly illegal personally destroy or impair documentary or other physical evidence for the purpose of frustrating an official proceeding. Congress closed that loop by passing subsection (c), and nothing in the legislative history suggests an intent to broadly criminalize other conduct such as that alleged against Defendant Pepe in Count 1.

### C. The Allegations Against Defendant Pepe Fall Outside The Defined Scope of Activities Prohibited by Sec. 1512(c)(2).

The text, structure, and historical development of Section 1512(c)(2) over time strongly suggest that the language of Subsection (c)(1) cabins the scope of Subsection (c)(2).

At best, there is a serious ambiguity that attaches to the scope of conduct criminalized by Subsection (c)(2), and courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute," *Aguilar*, 515 U.S. at 600, and have "construe[d] penal laws strictly and resolve[d] ambiguities in favor of the defendant," *Nasir*, 17 F.4th at 473 (Bibas, J., concurring) (citation omitted).

This Court should conclude that § 1512(c)(2) is limited by the narrow and focused language of subsection (c)(1), and the scope of activity criminalized by its terms is limited to conduct "otherwise" impairing or altering a document, record, or other object for the purpose of corruptly obstruct, impede or influence an official proceeding.

Pepe, however, is not alleged to have taken such action. Instead, Count 1 of the Indictment alleges only that he "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15- 18."  Indictment at 2.  Nothing in Count 1 alleges conduct by Pepe with respect to a document, record, or other object in order to corruptly obstruct, impede or influence Congress's certification of the electoral vote.

## CONCLUSION

Based on the foregoing, Defendant William Pepe respectfully requests that this Court dismiss Count 1 of the Indictment with prejudice.

Dated: March 19, 2024          Respectfully submitted,

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com