IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-52-2 (TJK) |
| : | |
| WILLIAM JOSEPH PEPE, : | |
| : | |
| : | |
| **Defendant.** : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT

The defendant, William Pepe, has filed a motion to dismiss the count of the superseding indictment charging him with a violation of 18 U.S.C. § 1512(c)(2).[1] ECF 151. Pepe argues that the text of 18 U.S.C. § 1512(c)(2) is not applicable to his conduct. Pepe's argument is contrary to D.C. Circuit precedent and asks the Court to reach factual conclusions that are inappropriate at this stage. The Court should deny Pepe's motion.

### PROCEDURAL BACKGROUND

On April 16, 2021, a grand jury returned a superseding indictment, charging Pepe with (1) Conspiracy, in violation of 18 U.S.C. § 371 (with 18 U.S.C. §§ 231(a)(3) and 1512(c)(2) as objects); (2) Obstruction of an Official Proceeding, and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (3) Obstruction of Law Enforcement During Civil Disorder, and

---

[1] Pepe is charged in Count One with Conspiracy, in violation of 18 U.S.C. § 371, with 18 U.S.C. § 1512(c)(2) and 231(a)(3) as dual objects; however, Pepe's motion to dismiss specifically refers the count "charging him with a violation of 18 U.S.C. Sec. 1512(c)(2)" (ECF 151 at 2), which is Count Two. The Government therefore interprets Pepe's filing as a motion to dismiss Counts One only to the extent it charges a Section 1512(c)(2) object and the entirety of Count Two, and responds as such.

1

Aiding and Abetting, in violation of 18 U.S.C. § 231(a)(3) and 2; (4) Destruction of Government Property, and Aiding and Abetting, in violation of 18 U.S.C. §§ 1361 and 2; (5) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (6) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); and (7) Act of Physical Violence in a Restricted Building or Grounds, and Aiding and Abetting in violation of 18 U.S.C. § 1752(a)(4) and 2. ECF 34.

On March 18, 2024, Pepe filed a motion to dismiss Count One of the Superseding Indictment, ECF 151, which the government construes as an attack on the Section 1512(c)(2) charge (Count Two and one of the two objects of the conspiracy charged in Count One).

## FACTUAL BACKGROUND

On January 6, 2021, a joint session of the United States Congress convened at the Capitol at approximately 1 p.m. During the joint session, which was an official proceeding, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election. As the proceedings continued in both the House and the Senate, and with Vice President Michael R. Pence present and presiding over the Senate, a large crowd gathered outside of the Capitol. Between 1:00 and 2:00 p.m., certain individuals breached the restricted perimeter of the Capitol grounds, and at approximately 2:13 p.m., rioters broke into the Capitol building. Shortly thereafter, at approximately 2:20 p.m., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress,

including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021.

On the morning of January 6, Pepe met a group of approximately one hundred Proud Boys members near the Washington Monument at 10 a.m. Shortly after 10 a.m., the group of Proud Boys marched away from the rally that was taking place near the Washington Monument toward the Capitol. Pepe and the marching group arrived at the Peace Circle, at the edge of the restricted portion of Capitol grounds, at approximately 12:50 p.m. Members of this crowd violently disassembled and trampled the metal bike rack barriers that were blocking further entry into Capitol grounds. The crowd charged over the fallen bike rack barriers and advanced toward the West Plaza of the Capitol. Pepe was at the front of this crowd.

At the West Plaza, Pepe and the crowd encountered another set of metal bike rack barriers, behind which was a line of police officers. Behind the officers was a waist-high black metal fence. Pepe dragged a segment of the metal bike rack barriers away, as did other rioters. The police line reformed behind the black metal fence. As Pepe and rioters approached the black metal fence, Pepe looked directly into a nearby camera, and yelled, "Let's go! This is what we came for, yeah!" Officers began to deploy pepper spray and other crowd control measures to get the crowd to disperse. Pepe was pepper sprayed, and he posted a selfie-style video in which he declared, "Yo, the cops pepper sprayed me and Hooks.[2] Me and Hooks got fucking maced. Storming that Capitol, baby!" At 2:16 p.m., Pepe entered the Capitol through the Senate Wing Door. He was inside the

---

[2] "Hooks" refers to another member of Pepe's Proud Boys chapter who had marched to the Capitol and stormed the First Street gate area with the group.

building for approximately 38 minutes, exiting at 2:54 p.m. through a broken window next to the Senate Wing Door.

## ARGUMENT

I.   **LEGAL STANDARD**

Federal Rule of Criminal Procedure 7(c)(1) states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient under the Constitution and Rule 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). This may be accomplished by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976). As such, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).

A defendant may move to dismiss an indictment or count prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B). A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined *without a trial on the merits*." *Id.* (emphasis added). Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015). Indeed, "[i]f contested facts surrounding the

commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination. Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *United States v. Bingert*, Case No. 1:21-cr-93 (RCL), ECF 67 (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 10 (D.D.C. 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence).

An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

## II. COUNT TWO (OBSTRUCTION OF AN OFFICIAL PROCEEDING) AND THE SECTION 1512(c)(2) OBJECT OF COUNT ONE SHOULD NOT BE DISMISSED

Pepe claims that the obstruction of an official proceeding charge brought under 18 U.S.C. § 1512(c)(2) must be dismissed because that charge requires a defendant to impair evidence or documents, which Pepe claims he did not do. Pepe's motion fails because his interpretation is foreclosed by D.C. Circuit precedent and because his challenge is to the sufficiency of the evidence, which is not properly before the Court on a motion to dismiss. The indictment properly

charges Pepe with violating 18 U.S.C. § 1512(c)(2); whether his conduct concerned documents or evidence is something that can only be assessed at the trial stage.

### A. Section 1512(c)(2) "encompasses all forms of obstructive conduct".

Pepe argues that Section 1512(c)(2) is limited by the language of subsection (c)(1), and the scope of activity criminalized by its terms is limited to conduct "otherwise" impairing or altering a document, record, or other object for the purpose of corruptly obstruct, impede or influence an official proceeding. ECF 151 at 13. The superseding indictment, however, properly states an offense under Section 1512(c)(2), which applies to all forms of obstructive conduct and not just acts of evidence impairment.

In *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), a three-judge panel in the D.C. Circuit addressed three consolidated January 6 cases where Judge Nichols held that Section 1512(c)(2) "'requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.'" 64 F.4th at 334 (quoting *United States v. Miller*, 589 F. Supp. 3d 60, 78 (D.D.C. 2022)). Because the indictments in the cases on appeal did not allege that the defendants "violated § 1512(c)(2) by committing obstructive acts related to 'a document, record, or other object,' [Judge Nichols] dismissed the § 1512(c)(2) counts" in all three cases. *Id.* The government filed interlocutory appeals and the D.C. Circuit reversed, rejecting Judge Nichols's reading of Section 1512(c)(2).

The *Fischer* panel held that Section 1512(c)(2) contains no requirement that the obstructive acts be done with respect to a document or record and that the alleged actions of the January 6 rioters in the cases before the panel "fall[] comfortably within the plain meaning" of the statute's prohibition. *Id.* at 350. But the *Fischer* panel went further than that, ruling that "[u]nder the most

6

natural reading of the statute, § 1512(c)(2) applies to *all forms of corrupt obstruction* of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at 336 (emphasis added). The *Fischer* court concluded that "[this] broad interpretation of the statute—encompassing all forms of obstructive acts—is unambiguous and natural, as confirmed by the 'ordinary, contemporary, common meaning' of the provision's text and structure." *Id.* at 337 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Although the *Fischer* panel splintered in its discussion of the *mens rea* required for a defendant to act "corruptly," *see id.* at 351-363 (Walker, J., concurring in part), the portion of the *Fischer* panel opinion concerning the *actus reus* required to violate Section 1512(c)(2) was authored by Judge Pan and joined by Judge Walker; it thus constitutes *Fischer*'s binding holding, *see id.* at 336-340; *see also United States v. Brock*, 21-cr-140 (JDB), ECF 107 at 6. *Fischer* thus confirms that the superseding indictment in this case is sufficient.

In March of 2024, the D.C. Circuit affirmed this broad reading of Section 1512(c)(2)'s *actus reus* in *United States v. Brock*. No. 23-3045, 2024 WL 875795 (D.C. Cir. Mar. 1, 2024). Rejecting the defendant's argument that Section 1512(c)(2) is limited to acts of "evidence impairment" or "actions taken with respect to a document, record, or other object," the D.C. Circuit explained that "[u]nder *Fischer* . . . Section 1512(c)(2) serves as a 'catch-all' provision 'that covers otherwise obstructive behavior that might not constitute a more specific offense involving documents, records, or objects under [Section] 1512(c)(1).'" *Id.* at *4 (quoting *Fischer*, 64 F.4th at 337).

As *Brock* makes clear, so long as *Fischer* remains the governing law of this Circuit, Pepe's argument is meritless.

7

### B. The rule of lenity does not apply.

Pepe also invokes the rule of lenity. The rule of lenity applies "only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *Fischer*, 64 F.4th at 350 (quoting *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (1994)). In addressing the same argument from another January 6 defendant, the Circuit concluded, "the language of § 1512(c)(2) is clear and unambiguous. Restraint and lenity therefore have no place in our analysis." *Id*.

### C. Even if the Section 1512(c)(2) allegations were limited to document or evidence impairment, dismissal would be improper.

Pepe's motion also fails because it requires the Court to make a factual judgment as to his conduct: to find that it did not impair evidence or documents, and that dismissal is therefore proper. This argument misunderstands pleading requirements and the limits of Rule 12. Evidence impairment, which appears nowhere in the statutory text of Rule 1512(c)(2), need not be alleged as part of the indictment. The indictment includes the "operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). It identifies the official proceeding in question, namely, the Certification of the Electoral College vote. And this is a speaking indictment, with substantial detail regarding the riot and Pepe and his codefendants' role in it. The indictment does not need to more specifically allege that the obstruction took the form of taking some action with respect to a document or evidence. The allegations "clear[] th[e] low bar," *see United States v. Sargent*, No. 21-cr-258, 2022 WL 1124817, at *1 (D.D.C. Apr. 14, 2022) (Hogan, J.), to sufficiently plead a violation of Section

8

1512(c)(2). *See United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'") (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).

Pepe's argument is essentially a sufficiency-of-the evidence challenge. To grant his motion would require the Court to find, at this juncture, that the government cannot prove that Pepe impaired evidence or documents; in essence, to grant summary judgment in Pepe's favor. That is not what Rule 12 is for. Rule 12 does not permit dismissal based on the sufficiency of the evidence. Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a full proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005)—neither of which has occurred here. "If contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *Pope*, 613 F.3d at 1259 (Gorsuch, J.).

Indeed, here, evidence at trial could establish the documents and records used in the Certification proceeding and prove that Pepe's conduct had the natural and probable effect of destroying or imperiling those documents and records or impairing evidence. At a minimum, Section 1512(c)(2) covers conduct that prevents the examination of documents, records, and other nontestimonial evidence in connection with an official proceeding. It thus covers displacing lawmakers from the House and Senate Chambers, where they would examine and discuss those

certificates and other records. The government could therefore prove its case at trial even under an evidence/document-impairment standard.

The Court, however, need not reach such a question. The D.C. Circuit has squarely rejected Pepe's position; and, even if it had not, the indictment adequately alleges the crime by tracking the operative statutory text, date, and time. It is sufficient.

### III. CONCLUSION

For the foregoing reasons, this Court should deny Pepe's motion to dismiss Count Two and the Section 1512(c)(2) object of Count One of the superseding indictment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: */s/ Carolina Nevin*
CAROLINA NEVIN
Assistant United States Attorney
NY Bar No. 5226121
601 D Street, NW
Washington, DC 20530
(202) 803-1612
carolina.nevin@usdoj.gov